431 A.2d 287

**COMMONWEALTH of Pennsylvania,**

v.

**Robert A. MEYER, Appellant.**

Superior Court of Pennsylvania.

Argued April 16, 1980.

Filed June 12, 1981.

John P. Tobin, Jr., Pittsburgh, for appellant.

Kemal Alexander Mericli, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before PRICE, BROSKY and MONTGOMERY, JJ.

BROSKY, Judge:

Robert A. Meyer has appealed from the lower court's affirmance of his conviction by a magistrate,[1] of the summary offense of public drunkenness.[2] The central issue for our determination is whether, under the facts presented, appellant's conduct constituted public drunkenness within the statutory definition of the offense. The lower court found that appellant's conduct constituted public drunkenness and that his arrest for that offense was proper. We reverse.

Appellant's central contention is that the Commonwealth failed to prove that his conduct fit within the statutory definition of public drunkenness and that therefore his conviction should be reversed.

The facts are as follows. On August 7, 1978, at approximately 10:30 p. m., appellant, a sixty-year old man, entered V.F.W. Post 118 in Millvale, Pennsylvania. He had been a member of the V.F.W. for approximately thirty-five years. He sat down and ordered a Pepsi-Cola from the stewardess, Mrs. Mueller, placing a dollar bill on the bar for the drink, which was collected by Mrs. Mueller, who thereafter placed his change on the bar. While she was on the telephone, Mrs. Mueller heard Mr. Meyer complain loudly that he had been

---

1. On October 23, 1978, appellant was found guilty by a local magistrate of public drunkenness. On January 30, 1979, an evidentiary hearing was held in the Court of Common Pleas which resulted in dismissal of appellant's appeal from the magistrate's finding. After a subsequent hearing, the court affirmed its order of January 30, 1979 dismissing appellant's appeal from the magistrate's finding.

2. Act of December 6, 1972, P.L. 1480, No. 334, § 1, eff. June 6, 1973, 18 Pa. C.S. § 5505.

overcharged. She testified that she had overcharged him a nickel.

Although the testimony is conflicting it appears from the record that appellant and Mrs. Mueller exchanged angry words, and that Mrs. Mueller then asked her husband, the Commander of the club, to call the police.

The lower court found that, during the dispute, appellant became very loud and abusive. A few minutes later, two Millvale police officers arrived. Both officers testified that upon entering the club, they approached Mr. Meyer and told him he was going to have to leave. After speaking to him for a few minutes, they escorted him outside. Once outside, appellant was put into a police car and taken to the police station, where he was placed in a cell.

18 Pa.C.S. § 5505 states:

A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol to the degree that he may endanger himself or other persons on property, or annoy persons in his vicinity.

Appellant argues that he was not manifestly under the influence of alcohol to the degree that he was a danger to himself or to other persons on property, or to the degree that he annoyed persons in his vicinity. He further contends that the V.F.W. Post is not a "public place."

The Commonwealth contends, however, and the court below found, that appellant was arrested outside the Post, which, it argues, may be considered a "public place."

To begin with, we note that we have not had occasion before to construe the language of this statute in light of the factual situation posed here. Our first task, therefore, is to construe the meaning of "public place" within the context of the statute, in order to determine whether this element of the offense was established by the Commonwealth.

Section 5505 does not define "public place." The term does appear, however, in two places in the Crimes Code: in

the section dealing with prostitution, section 5902,[3] and in the section dealing with disorderly conduct, section 5503.[4] Section 5902(f) defines it as "any place to which the public or any substantial group thereof *has access.*" (Emphasis added.) The ordinary meaning of "access" is: "the right to enter or make use of;" "the state or quality of being easy to enter." [5]

Section 5503(c) defines public places as, *inter alia,* "any premises which are open to the public."

We find that V.F.W. Post 118 is a private club which is not "open to the public." On cross-examination, the stewardess testified that in order to use the premises, one must be a member or a guest of a member. When asked, "And the average public, ordinary public, are not permitted in this establishment is that correct?", she replied, "Yes." It therefore cannot be said here that the public at large has the right to enter V.F.W. Post 118 or make use of its facilities, nor can it be said that V.F.W. Post 118 is "easy to enter" when the individual attempting entry is not a member or the guest of a member. The same applies to the area outside the Post in this case. Although the general public may be permitted to enter the area outside the building itself, from the street, we do not find that such an area fits within the concept of "public place." Our finding is based in part on the category of "public places" contained in the disorderly conduct section which includes highways, transport facilities, schools, prisons and neighborhoods. There are no Pennsylvania cases holding a private club to be a public place for the purposes of this or any other section of the Pennsylvania Crimes Code.

3.  Act of December 6, 1972, P.L. 1480, No. 334, § 1, eff. June 6, 1973, 18 Pa. C.S. § 5902. 18 Pa. C.S. § 5902.

4.  Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973, 18 Pa. C.S. § 5503.

5.  The American Heritage Dictionary of the English Language (2nd Ed.1973).

However, even if we find that even if the area outside the Post may be considered a "public place," we hold that it was error to find appellant guilty of public drunkenness under the facts of this case. The offense of "public drunkenness," which appears in Article F., "Offenses Against Public Order and Decency," is closely akin to the offense of Disorderly Conduct which also appears in that article. It is directed, as is the disorderly conduct section, to protecting the general public against antisocial acts which violate public order and decency. The public drunkenness section is based on Model Penal Code § 250.5.[6] The comment to that section notes that "[I]n most cases, the drunk will have been guilty of *some other category of disorderly conduct*, but it seems necessary to provide a basis for police action for those who, for example, are in a drunken stupor but not otherwise making a nuisance of themselves.... "[7] (Emphasis added.)

▆▆▆▆ In his discussion of § 5505, K. Jarvis comments, "This statute may be useful in dealing with the skid row person or the constant alcoholic...."[8] We find that the statute was enacted to deal with the problem of chronic alcoholics who voluntarily appear on our streets, in our parks, in our neighborhoods, on a routine basis, shouting and cursing at real or imagined foes, causing disruption and annoyance. It should not be used as the basis for arrest in a situation in which an intoxicated individual, who has not been shown to be a chronic alcoholic, is escorted by two policemen from a private place into an arguably public one. In order to be found guilty of public drunkenness, the accused must be in the "public place" voluntarily.

The case of *Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968), dealt with a Texas statute proscribing public drunkenness. The appellant, who had been arrested and charged with being found in a state of intoxication in a

6. Model Penal Code § 250.5 (Proposed Official Draft 1962).

7. Model Penal Code § 250.5, Comment (Tent.Draft No. 13, 1961).

8. Kingsley A. Jarvis, Pennsylvania Crimes Code and Criminal Law (19—).

public place, argued that he was an alcoholic and that "his appearance, in public [while drunk was] * * * not of his own volition...," and therefore it would be "cruel and unusual" to punish him for that conduct. Although the court did not find his argument persuasive with regard to the cruel and unusual punishment aspect, Justice Black did comment, in a concurring opinion joined by Justice Harlan, that if the appearance in public was the result of duress, or coercion, then acquittal is mandated, citing *Martin v. State* 31 Ala. App. 334, 17 So.2d 427 (1944).

In *Martin*, appellant's conviction for public drunkenness was reversed by the court of appeals of Alabama because the police had arrested him at his home where he was drunk and had taken him onto the highway, where he was then arrested for violating the public drunkenness statute. The court stated that under the plain terms of the statute, "*a voluntary appearance is presupposed.*" (Emphasis added.)

█ We find here that appellant's appearance outside the V.F.W. Post was not "voluntary," and therefore his conviction must be reversed. We would find the same even if the area outside the Post may rightfully be considered a "public place."

At trial, one of the two arresting officers, Officer Schwab, testified that appellant was sitting at the bar, with no one to his immediate left or right, and that he and fellow Officer Baranyai went up and took positions on either side of him. Upon direct examination, appellant testified as follows in response to being asked what happened when the officers came in:

A. Officer Schwab came on the side of me here (indicating) and Officer Baranyai came on my left side. And I said, "I'm the one you're looking for. Am I under arrest?" He said, "consider yourself so."

The bartender, Robert Hein, when asked what, if anything, appellant said to the officers.

A. The one officer put his hand on his [appellant's] shoulder, and he said, "I take it that that means I'm under arrest," and the officer said, "That's right."

We find that, under these circumstances, appellant did not voluntarily appear in any public place.

■ Finally, we hold that the Commonwealth did not prove beyond a reasonable doubt that appellant was "manifestly under the influence of alcohol. . . ." The Model Penal Code Comment states that this requirement "[was] designed to require some *aberrant behavior* before arrest is authorized." [9] (Emphasis added.) Although not binding on us, we find the case of *U.S. v. Crutchfield*, 418 F.Supp. 701 (W.D. Pa.1976) to be persuasive in its statement that

> [Section 5505] is carefully drawn so as *not to* punish *all forms of drunkenness* but only drunkenness. . . to such a degree as to endanger the person himself or other persons or property or annoy persons in the vicinity. . .

Id. at 702 (emphasis added). See also *Commonwealth v. Shillingford*, 231 Pa.Super. 407, 332 A.2d 824 (1975) (the offense involves the state of being intoxicated to an endangering degree).

Here, we find that the Commonwealth did not prove beyond a reasonable doubt that appellant was intoxicated to the degree required by the statute. Other than testimony to the effect that he was staggering a bit and that his breath smelled of alcohol, there is nothing in the record to support the Commonwealth's contention that he was "manifestly under the influence of alcohol." It must be remembered that for the Commonwealth's argument to succeed, it must be shown that appellant was intoxicated to the requisite degree while he was outside the Post, in the so-called "public place." Therefore, it must be shown that while appellant was outside the Post, he was intoxicated to such a degree that he might endanger himself or others or property, or annoy persons *in his vicinity*.

It appears from the record that the only persons outside the Post at that point in time were the two officers, and there is no testimony indicating that they felt appellant might harm them or himself, especially since, as soon as they

9. Model Penal Code § 250.5, Comment (Tent.Draft No. 13, 1961).

arrived outside, the officers put appellant in a squad car. The only persons in appellant's vicinity to annoy were the two officers. Again it is our opinion that the statute was designed to protect the public from "manifestly drunk" persons who voluntarily go to public places where they are likely to harm or annoy the people likely to be found there. Since the only persons in appellant's vicinity were the two officers who insisted that appellant accompany them outdoors, we hold that this element of the offense was not established here beyond a reasonable doubt.

While the appellant's conduct may have provided a basis for arrest under some other section of the Crimes Code, all he was charged with here was public drunkenness. For this reason, we reverse the order of the lower court.

Accordingly, we hold that appellant's conduct on August 27, 1978 did not fit within the statute and that the Commonwealth failed to prove every element of the offense beyond a reasonable doubt.

Order reversed.

PRICE, J., dissents.