J-A32039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANDREW P. BIROS | |
| Appellant | No. 145 WDA 2015 |

Appeal from the Judgment of Sentence entered December 18, 2014
In the Court of Common Pleas of Westmoreland County
Criminal Division at No: CP-65-SA-0000225-2014

BEFORE:  SHOGAN, OTT, and STABILE, JJ.

MEMORANDUM BY STABILE, J.                    **FILED MAY 20, 2016**

Appellant, Andrew P. Biros, appeals from the judgment of sentence entered in the Court of Common Pleas of Westmoreland County on December 18, 2014[1] following his conviction of the summary offense of public drunkenness.[2]  Upon review, we affirm.

_____

[1] As the caption reflects, this appeal is from the judgment of sentence entered on December 18, 2014, and not—as Appellant incorrectly suggests—from the trial court's January 7, 2015 order denying his post-sentence motion.

[2] 18 Pa.C.S.A. § 5505.

On April 27, 2014, Appellant was a patron at The Rialto Café ("Rialto"), a bar in the City of Greensburg.[3] According to Rialto employee Justin Payton (Payton), who testified first for the Commonwealth, Appellant, along with his girlfriend Andrea Hogue and one other male individual, was in the patio area of the Rialto at approximately 2:00 a.m., the closing time for the bar. N.T. Summary Appeal Trial, 12/18/14, at 9. Payton worked as security and as a barback for the Rialto for two years. *Id.* at 5. At approximately 2:10 a.m., Payton asked Appellant and his friends to leave the bar because it had closed. *Id.* at 10. One of the three responded they were waiting for Appellant's sister and were not going to leave. *Id.* at 11. Appellant, who appeared drunk to Payton, stated he was "not leaving her here for you guy [sic] to rape." *Id.* at 12. Payton then grabbed Appellant's friend who was giving him problems and started dragging him out of the bar. *Id.* at 13. As he attempted to remove the man standing with Appellant, Appellant grabbed Payton from behind, ripping Payton's shirt in the process. *Id.* at 14. Payton then turned his attention to Appellant to remove him from the bar. *Id.* Appellant fought back the entire time Payton was trying to remove him. *Id.* at 15. Payton saw Appellant consume alcohol earlier in the evening and that "he reeked of alcohol, and he had a complete attitude." *Id.* at 16.

_____

[3] Unless otherwise specified, these facts come from the transcript of the summary appeal trial held on December 18, 2014. N.T. Summary Appeal Trial, 12/18/14, 1-91.

Based upon his experience with other intoxicated individuals, Payton believed Appellant was under the influence of alcohol. *Id.* at 16-17. When Payton reached the exit, Rialto employee Scott Riddle approached him to help take Appellant to the sidewalk. *Id.* at 17. At that point, Payton went back inside to retrieve the other man. *Id.* When he brought the other man outside, Appellant "was screaming at everybody, saying I'm going to sue you all. This is bullshit." *Id.* Appellant's girlfriend told Payton she had lost her glasses, so Payton went with her to look for her glasses on the patio. *Id.* While back in the bar, Payton could still hear Appellant yelling and screaming outside. *Id.* at 21. Appellant then ran back into the bar. *Id.* Payton dragged Appellant out of the bar a second time to the sidewalk. *Id.* There were a few bartenders and a few other people on the sidewalk at that time. *Id.* at 19. Within a few minutes of removing the Appellant a second time, police arrived. *Id.* It was Payton's opinion Appellant was still under the influence of alcohol at the time. *Id.* at 22.

Scott Riddle ("Riddle") also testified. At the time, he was employed at the Rialto as a doorman/security for about two and a half years. *Id.* at 33. He was notified of a disturbance on the deck by a bartender or a patron and went to the deck to see what was happening. *Id.* at 34-35. At that point, Payton already had been in an altercation with Appellant and other individuals. *Id.* at 36. Riddle testified,

> [Appellant] was just acting like any other drunk individual that was irate. He was going off the handle yelling we are going to sue you, blah-blah-blah. I said to him, you need to be quiet and

- 3 -

shut up because if you don't, the police are going to come. And at that point in time it was, like, they were already there at that point.

*Id.* at 38. Based on his observations, Riddle was of the opinion that Appellant was under the influence of alcohol. When asked how alcohol was affecting Appellant, Riddle testified, "I mean, he wasn't blackout drunk, but he was getting there." *Id.* at 39. When police arrived, Appellant continued to exhibit the same behavior he engaged in before police arrived at the bar. *Id.* at 41. At some point in time during the evening, Riddle was informed, possibly by Payton, that Appellant no longer was to be served alcohol. *Id.* at 42.

Officer Shawn Denning, a six-and-a-half year veteran with the City of Greensburg Police Department, also testified. *Id.* at 51. When Officer Denning arrived on the scene, it was "fairly chaotic" and Appellant was "screaming, yelling, pointing at the bouncers." *Id.* at 52. Appellant was very loud and patrons were lingering outside of the bar, focusing on Appellant. *Id.* at 54. When he initially tried to have a conversation with Appellant, he could smell the odor of alcohol on Appellant's person and breath. *Id.* Although he could understand what Appellant was saying, he noticed that Appellant was slurring his speech. *Id.* Appellant was visibly upset and continued to yell and scream during the attempted conversation. *Id.* at 55. Based upon his experience and observations, Officer Denning was of the opinion Appellant was under the influence of alcohol, *id.* at 56, such that he "would definitely not feel safe to let [Appellant] walk away from that

scene." *Id.* On cross-examination, Officer Denning testified that when he first arrived, he observed only a minor laceration with a small amount of blood on Appellant's nose. *Id.* at 58.

Appellant presented the testimony of his girlfriend, Andrea Hogue. Ms. Hogue believed that Appellant consumed only two beers, and was confident that no one in their party was denied alcohol by the bartender. *Id.* at 68-69. She testified that after 2:00 a.m., they were told it was time to leave by someone who was trying to usher them out the door. She responded she was looking for her glasses. *Id.* at 69-70. She then saw Payton come over and grab Appellant, throw him against the patio fence, and punch him in the face. *Id.* She did not observe Appellant provoke Payton in any way such as jumping on his back. *Id.* She however, was not able to observe everything because she was not wearing her glasses. *Id.* at 72. In her opinion, Appellant was not intoxicated. *Id.* After police arrived, she observed Appellant with a bloody nose and a scratched-up neck. *Id.* at 73. Ms. Hogue testified that Payton's shirt was ripped because she was trying to pull him off Appellant. *Id.*

Appellant testified on his own behalf. Appellant testified he had not consumed any alcohol before arriving at the Rialto and thinks he had about two beers while there. *Id.* at 85. He did not recall slurring his speech, but stated that he does sometimes because he mumbles a lot. *Id.* He and his friend were standing outside waiting for Ms. Hogue and another female to exit the bar. *Id.* at 86. He saw his friend "getting pushed around" by Riddle

- 5 -

who then started pushing Appellant. *Id.* Suddenly, Appellant was grabbed by the neck and punched in the face three times but was never escorted out of the bar. *Id.* He made it out of the bar on his own and went down the street to the area where Officer Denning actually arrested him. *Id.* He was trying to get to his car but was so concussed that he was walking the wrong way. *Id.* He never raised his voice and did not say a word to Officer Denning until he was taken to the patrol car. *Id.* at 87. He further denied screaming in the street, being escorted from the bar twice, or that Officer Denning tried to have a calm conversation with him. *Id.* at 87-88. Appellant testified that he was immediately handcuffed upon Officer Denning's arrival. *Id.* at 89.

At the conclusion of the bench trial, Appellant was found guilty of public drunkenness and fined $500 plus costs. Judgment of sentence was entered on December 18, 2014. Appellant filed a post-sentence motion, which was denied by order of January 7, 2015. Appellant timely filed an appeal and complied with the court's order to file a 1925(b) statement. The trial court filed a 1925(a) opinion.

On appeal, Appellant raises four issues:

1. Whether the trial court had sufficient evidence, as a matter of law, to find [Appellant] guilty of being manifestly under the influence of alcohol under Section 5505 of the Pennsylvania Crimes Code, when the evidence viewed in a light most favorable to the Commonwealth showed only that [Appellant] (1) smelled of alcohol, (2) had been forcibly removed from a bar, (3) was observed to be loud outside the bar and (4) was

observed to have slightly slurred speech but otherwise articulate?

2. Under the Sixth and Fourteenth Amendments to the United States Constitution, did the trial court below infringe upon [Appellant's] right to Assistance of Counsel, and thus, commit reversible error, when the judge denied defense counsel the opportunity to deliver closing argument?

3. Whether the factual findings of the trial court constitute an error of law or abuse of discretion when the judge's rulings and conduct at trial convey prejudice and bias against [Appellant]. Specifically, where the trial court only considered [Appellant's] reactions following a physical altercation with one of his accusers and where the trial court refused to consider the actions of the accuser as an alternate cause for [Appellant's] loud behavior and where the trial court improperly overruled hearsay and relevance objections to admit highly prejudicial and unverified statements [sic].

4. Whether the trial court committed an abuse of discretion when it found the verdict was not against the manifest weight of the evidence [sic].

Appellant's Brief at 5-6.

In his first issue, Appellant contends the evidence presented at trial was insufficient to prove, beyond a reasonable doubt, that Appellant was guilty of the summary offense of public drunkenness. Appellant's Brief at 16.

When we review a claim regarding sufficiency of the evidence, we must determine:

whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the factfinder to conclude that the Commonwealth established all of the elements of the offense

beyond a reasonable doubt. Additionally, when examining sufficiency issues, we bear in mind that: the Commonwealth's burden may be sustained by means of wholly circumstantial evidence; the entire trial record is evaluated and all evidence received against the defendant considered; and the trier of fact is free to believe all, part, or none of the evidence when evaluating witness credibility.

*Commonwealth v. Crabill*, 926 A.2d 488, 490-91 (Pa. Super. 2007).

An accused is guilty of public drunkenness "if he appears in any public place manifestly under the influence of alcohol . . . to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity." 18 Pa.C.S.A. § 5505. Instantly, it is undisputed that Appellant was in a public place. The only issue to be decided is whether the evidence was sufficient to support a finding Appellant was "manifestly under the influence of alcohol" to the degree required under Section 5505.

Upon review, we have no trouble concluding that the trial court did not err in finding that the evidence was sufficient to support a conviction for public drunkenness. Three individuals, Mr. Payton, Mr. Riddle, and Officer Denning, all testified Appellant was under the influence of alcohol. In addition to Appellant's belligerent behavior, odor of alcohol, and slurred speech, Appellant was involved in a physical altercation, was forcibly removed from the Rialto, and continued to yell over Officer Denning's requests to calm down. Despite Appellant's claim, whether Appellant showed signs of intoxication inside the Rialto prior to closing or was denied alcohol by the bartender is of no moment. While he was in the bar and outside, there were numerous other people in Appellant's vicinity and the

record supports the conclusion that Appellant might "endanger himself or other persons or property, or annoy persons in his vicinity." 18 Pa.C.S.A. § 5505. Indeed, Appellant had already sustained injuries during a physical confrontation prior to Officer Denning's arrival. He was disruptive enough that "the patrons outside lingering around were all focused on him and what was going on." N.T. Summary Appeal Trial, 12/18/14, at 54. Officer Denning testified that he "would definitely not feel safe to let [Appellant] walk away from the scene." *Id.* at 56. Our review of the record indicates that the evidence was indeed sufficient to support the trial court's finding that Appellant was manifestly under the influence of alcohol to a degree he may endanger himself or other persons or property, or annoy persons in his vicinity.

We find Appellant's almost exclusive reliance on **Commonwealth v. Meyer**, 431 A.2d 287 (Pa. Super. 1981), to be misplaced. Appellant argues that **Meyer** established "that the element of being 'manifestly under the influence of alcohol . . . [was] designed to require some *aberrant behavior*'" and "that the offense of Public Drunkenness is 'carefully drawn so as *not* to punish all forms of drunkenness.'" Appellant's Brief at 17 (quoting **Meyer**, 431 A.2d at 291-92). Appellant claims that he was belligerent only after he was in a physical altercation with Payton and that none of the testimony shows that he exhibited signs of intoxication inside the Rialto prior to closing, except the inadmissible hearsay indicating Appellant was denied alcohol by the bartender. Appellant's Brief at 29. Appellant argues that

*Meyer* demonstrates that Appellant's slightly slurred speech and odor of alcohol alone are not sufficient to prove him guilty of public drunkenness.

We find the following from *Meyer* sufficient to demonstrate why that case is distinguishable from the instant matter.

> Other than testimony to the effect that he was staggering a bit and that his breath smelled of alcohol, there is nothing in the record to support the Commonwealth's contention that he was "manifestly under the influence of alcohol." It must be remembered that for the Commonwealth's argument to succeed, it must be shown that appellant was intoxicated to the requisite degree while he was outside the [V.F.W.], in the so-called "public place." Therefore, it must be shown that while appellant was outside the [V.F.W.], he was intoxicated **to such a degree that he might endanger himself or others or property, or annoy persons in his vicinity**.

> It appears from the record that the only persons outside the [V.F.W.] at that point in time were the two officers, and there is no testimony indicating that they felt appellant might harm them or himself, especially since, as soon as they arrived outside, the officers put appellant in a squad car. Again it is our opinion that the statute was designed to protect the public from "manifestly drunk" persons who voluntarily go to public places where they are likely to harm or annoy the people likely to be found there. Since the only persons in appellant's vicinity were the two officers who insisted that appellant accompany them outdoors, we hold that this element of the offense was not established here beyond a reasonable doubt.

*Meyer*, 431 A.2d at 291 (emphasis added).

In *Meyer*, the defendant was found not to be intoxicated to the degree required by Section 5505 because there was no evidence the defendant was a danger to himself or likely to harm or annoy anyone in the vicinity. While the defendant in *Meyer* may have been intoxicated, he was not guilty of public drunkenness, since there were no other persons in his vicinity, other

than police, who felt he was no threat to himself or the police. Defendant immediately was placed in a squad car where he was in no position to harm or annoy other people. The facts in *Meyer* stand in stark contrast to those here, where the evidence was such that Appellant was intoxicated, was verbally abusive, engaged in physical confrontations, and did so while in the company of other patrons, his friends, police, bar personnel, and other members of the public gathered who were observing his aberrant conduct. Accordingly, viewing the evidence in a light most favorable to the Commonwealth as the verdict winner, we find no merit to Appellant's sufficiency claim.

In his second issue, Appellant contends the trial court violated his right to assistance of counsel in violation of the Sixth and Fourteenth Amendments by refusing to let his counsel present a closing argument. Appellant did not raise this issue in his Rule 1925(b) statement, but does so for the first time in his brief. Accordingly, the issue is waived. *See* Pa.R.A.P. 1925(b)(4)(vii).

In his third issue, Appellant argues the trial court evidenced bias and prejudice against him because it only considered Appellant's reactions following a physical altercation with one of his accusers, refused to consider the actions of the accuser as an alternate cause for Appellant's loud behavior, and improperly overruled hearsay and relevance objections highly

prejudicial and unverified statements.[4]  The trial court, sitting as the fact-finder, was obliged to hear and consider all evidence and to weigh and make credibility determinations.  As long as the trial court's findings are supported by record evidence, this Court is not free to substitute its judgment for that of the trial court.  A trial court sitting as factfinder does not exhibit bias or prejudice simply because it chooses not to believe the evidence proffered by a non-prevailing party.

> [S]imply because a judge rules against a defendant does not establish any bias on the part of the judge against that defendant. If the appellate court determines that the party alleging judicial bias received a fair trial, then the allegation of judicial bias is not borne out.

***Commonwealth v. Travaglia***, 661 A.2d 352, 367 (Pa. 1995), *cert. denied*, 516 U.S. 1121 (1996)(citation omitted).  As in ***Travaglia***, Appellant here asserts nothing more than his disagreement with the trial court's adverse rulings in support of his claim of prejudice and bias.  Without more, Appellant's claim fails.

Finally, Appellant argues the trial court abused its discretion by concluding the verdict was not against the weight of the evidence.  Appellant's weight claim is premised upon challenges to credibility determinations made by the trial court.  Appellant claims that it is shocking

---

[4] While Appellant raises these evidentiary issues to support his claim of bias and prejudice by the trial court, Appellant does not raise these evidentiary issues in and of themselves as bases for a new trial.

to one's sense of justice that the trial court based its verdict on the credibility of Peyton and found that Appellant's nose was lacerated in the course of a physical altercation with Peyton, who testified he never struck or punched Appellant. Appellant argues it is shocking that Peyton and Riddle were deemed credible when their testimony was conflicting and self-serving. He also assails the credibility of Officer Denning who testified that in circumstances like this case, he always looks for someone to drive an individual home. Here, however, Appellant was released to his girlfriend three hours after being arrested.

This Court's standard of review when addressing a weight claim is well settled.

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citations omitted). Moreover,

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact[-]finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's

sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

***Commonwealth v. Morales,*** 91 A.3d 80, 91 (Pa. 2014), citing ***Commonwealth v. Tharp***, 830 A.2d 519, 528 (Pa. 2003).

The trial court heard and viewed the evidence and resolved material inconsistencies against the Appellant. The trial court found Payton, Riddle, and Officer Denning to be credible witnesses, as all three testified similarly regarding Appellant's behavior at the Rialto. Trial Court Opinion, 3/12/15, at 1. The trial court believed Payton's testimony that he did not punch Appellant in the face and rejected the accounts offered by Appellant and Ms. Hogue, who claimed Payton's attack on Appellant was unprovoked and that Appellant was never extremely loud and hostile. Based on the above facts and our review of the record, we discern no abuse of discretion in the trial court's ruling on the weight of evidence claim.[5] Appellant does no more than argue perceived inconsistencies in the evidence and urges this Court to reweigh the evidence presented before the trial court, something we cannot

_____

[5] Appellant claims the trial court did not cite the correct standard for a weight of the evidence claim. In fact, it is hard to tell the basis for the trial court's sufficiency and weight determination in that the trial court merely concluded that "[u]nder the applicable standard of review . . . it is submitted that there was sufficient competent evidence to support the Defendant's conviction and that no [e]rror of [l]aw occurred." Trial Court Opinion, 3/12/15 at 2. Despite this lack of analysis, we are not impeded from reviewing Appellant's weight claim, as the entire record of these proceedings is available for review. ***See Commonwealth v. Widmer***, 744 A.2d 745, 752-53 (Pa. 2000) (In the interests of justice, weight claim may be reviewed even though a court applies the wrong standard of review.).

do. Appellant has not argued—much less demonstrated—that the trial court committed a palpable abuse of discretion by rejecting his request for a new trial based upon the weight of the evidence. As such, Appellant is not entitled to relief on this claim.

Affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/20/2016