J-S32045-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JOHN SWIRSDING | |
| Appellant | No. 2375 EDA 2016 |

Appeal from the Judgment of Sentence July 6, 2016
in the Court of Common Pleas of Delaware County Criminal Division
at No(s): CP-23-CR-0007084-2015

BEFORE: GANTMAN, P.J., STABILE, and FITZGERALD[*] JJ.

MEMORANDUM BY FITZGERALD, J.:  **FILED AUGUST 30, 2017**

Appellant, John Swirsding, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas following a bench trial and his convictions for public drunkenness,[1] possession of marijuana,[2] and possession of drug paraphernalia.[3] Appellant asserts that the evidence was insufficient to support his conviction for public drunkenness, and that the trial court erred in denying his motion to suppress the contraband discovered in his vehicle during an inventory search. We affirm.

The trial court set forth the facts of this case as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 5505.

[2] 35 P.S. § 780-113(a)(31).

[3] 35 P.S. § 780-113(a)(32).

Appellant's arrest and convictions arise out of a 911 call for a possible domestic situation that Officer Robert McCreight of the Haverford Township Police Department responded to on September 12, 2015 at or about 4:00 a.m. in the area of the 2700 block of Belmont Avenue in Havertown, Pennsylvania.

Officer Robert McCreight of the Haverford Township Police Department was on patrol duty September 12, 2015 when he received a call over the DELCOM for a possible domestic situation along the 2700 block of Belmont Avenue in the Township involving two subjects fighting and a suspect running over objects in the driveway with his vehicle, a green Range Rover.

Upon approaching the area along the 2600 block of Haverford Rd., Officer McCreight identified a green Range Rover parked in front of a 7-11 store at 2606 Haverford Road fitting the description of the involved vehicle.

The area was desolate but for the empty lots of the surrounding businesses and the Range Rover was parked in front of the 7-11 store. As Officer McCreight pulled in to the lot the vehicle was neither running nor occupied.

Officer McCreight began to run the green Range Rover's tag information. As he did Appellant exited the 7-11 store and approached the officer. Officer McCreight asked the defendant whether the vehicle was his and the defendant responded that it was his and a conversation ensued.

Appellant explained that he was having an argument with his wife because she was purportedly cheating on him. Appellant stated he may have also struck another vehicle although his vehicle had no damage. As he spoke, Officer McCreight detected an odor of alcohol and observed [] Appellant's erratic behavior. Appellant's mood ranged from laughing about the situation to nearly crying and breaking down. Because of the behavior, he was placed in the back of the police cruiser. Appellant did admit to drinking earlier in the evening with his wife.

Based on all of the circumstances and his experience, Officer McCreight believed Appellant's behaviors indicated

he was under the influence possibly of alcohol. Specifically, based on the odor emanating from the Appellant, Appellant's admission that he had been consuming alcohol, his mood swings and very erratic behavior.

Officer McCreight testified that although Appellant would not be arrested for any domestic issue or DUI, he would be arrested for Public Drunkenness. Officer McCreight did not feel it was safe for [] Appellant to be driving. When it was decided that Appellant was going to be locked up for Public Drunkenness he was placed in handcuffs and replaced back into the police cruiser.

Since [Appellant's] vehicle was parked in the lot of the 7-11 convenience store, Officer McCreight was compelled to ask the person in charge if the vehicle could remain there. He was told the vehicle would have to be removed. Therefore, the on-duty tow, K&S Towing in Haverford was called to come and impound the vehicle.

The Haverford Township Police Department has a standing written impoundment and inventory search policy that requires the officer to search the vehicle for any valuables and create a form identifying all of the recovered objects so there can be no claim of loss. []CS-1 was marked for identification and identified as the Haverford Township Police directive regarding inventory search of vehicles[].

Officer McCreight testified that since he was not permitted to leave the vehicle on private property the vehicle was to be impounded. Pursuant to the policy he conducted a search of the vehicle and when he opened the door he was immediately struck with the strong smell of fresh marijuana which he described as overwhelming. Plainly observable in the center console there was a multicolored glass smoking bowl and a 4x6 white vacuum sealed bag which he recognized as a bag commonly used to package narcotics to hide the smell.

All of the seized contraband was in plain view upon opening the car door. The bowl was seized and the marijuana was seized.

Trial Ct. Op., 1/16/17, at 2-5.

On July 6, 2016, following the trial court's denial of Appellant's motion to suppress evidence, Appellant was convicted of the aforementioned charges. That same day, the trial court sentenced Appellant to thirty days of probation for public drunkenness, thirty days of probation for possession of a small amount of marijuana, and six months of probation for possession of drug paraphernalia. All sentences were to be served concurrently. On August 1, 2016, Appellant filed the instant timely appeal and subsequently filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a responsive opinion.

Appellant raises the following issues for our review:

> 1. Did the trial court err in its decision to not quash the [charging] public drunkenness as [] Appellant was not given any type of objective testing, had not behaved in a matter consistent for charging him with the summary offense of public drunkenness and, in fact, [] throughout the initial meeting as well as police interrogation acted peacefully and spoke with the officer in a peaceful fashion and if this information had been quashed by the court it would therefore eliminate the probable cause for the subsequent arrest and detention of [] Appellant?
>
> 2. Did the trial court err in denying that Appellant was a business invitee and therefore did not enjoy the protections given under the law to said business invitee directly or indirectly connected with his business dealing with the possessor of the property? Additionally, did the Commonwealth show that the police officer spoke with a true and correct agent of the business who had permission to speak with the police about possessions of [] Appellant or order the possessions be removed from the property forcibly?

3. Did the trial court err by allowing the warrantless seizure and towing of Appellant's immobilized but safely parked vehicle as well as the trial court's failure to suppress 2.9 grams of marijuana and drug paraphernalia which was found in the closed center console of the Appellant's motor vehicle in direct contravention of *Commonwealth v. Lagenella*, 83 A.3d 94 (Pa. 2013).

Appellant's Brief at 4-5.

In his first issue, Appellant claims that the evidence was insufficient to support his conviction for public drunkenness because the Commonwealth failed to present any evidence that he was "manifestly under the influence of alcohol or a controlled substance." Appellant's Brief at 18. Appellant points out that the arresting officer, Officer McCreight, testified that when he approached Appellant at the time in question, Appellant spoke to him in a peaceful fashion. *Id.* No relief is due.

When evaluating a challenge to the sufficiency of the evidence:

> [W]e view the evidence in the light most favorable to the Commonwealth together with all reasonable inferences from that evidence, and determine whether the trier of fact could have found that every element of the crimes charged was established beyond a reasonable doubt.

*Commonwealth v. Walker*, 836 A.2d 999, 1000 n.3 (Pa. Super. 2003) (citations and quotation marks omitted).

Further, the summary offense of public drunkenness is defined as follows:

> A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol or a controlled substance, as defined in the act of April 14, 1972 (P.L. 233, N. 64), known as the Controlled

- 5 -

> Substance, Drug Device and Cosmetic Act, except those taken pursuant to the lawful order of a practitioner, as defined in the Controlled Substance, Drug, Device, and Cosmetic Act, to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity.

18 Pa.C.S. § 5505.

Moreover, we note that to convict a person of public drunkenness, the Commonwealth need not present proof of a specific blood alcohol reading. Rather, the Commonwealth must establish that the defendant was intoxicated to such a degree that it "rendered him a danger to himself or others, or an annoyance to those around him." *Commonwealth v. Meyer*, 431 A.2d 287, 290 (Pa. Super. 1981).

As noted by the trial court, Officer McCreight, an officer with over ten years of experience, believed that Appellant's behavior indicated that he was under the influence of alcohol and was a potential danger to others. Officer McCreight specifically cited the odor of alcohol emanating from Appellant, Appellant's erratic behavior, and Appellant's own admission that he had been consuming alcohol. Moreover, read in a light most favorable to the Commonwealth, Appellant had already driven his car to the convenience store, and would have driven from the store had the officer not intervened. Accordingly, we conclude that the evidence presented was sufficient to support Appellant's conviction for public drunkenness. *See Walker*, 836 A.2d at 1000 n.3; *Meyer*, 431 A.2d at 290.

We next address Appellant's second and third issues together. Appellant discusses our Supreme Court's decision in **Lagenella** and asserts that the inventory search was illegal because the arresting officer improperly ordered his vehicle be towed. Appellant contends that at the time the police decided to tow his car, he was a "business invitee" of the convenience store and therefore was entitled to leave his car in the store's parking lot following his arrest. Appellant acknowledges Officer McCreight's testimony that an individual inside the store stated that Appellant would not be able to keep his car in the parking lot following his arrest. Appellant, however, generally avers that the Commonwealth failed to prove this individual was a proper "agent" authorized to require the removal of Appellant's car on behalf of the store. Appellant further emphasizes the convenience store lacked any signage which would have prevented him from leaving his car unattended, regardless of any lack of permission expressed by an employee of the store. Lastly, Appellant contends that the inventory search was conducted for investigatory purposes. We conclude Appellant's arguments warrant no relief.

"Inventory searches are a well-defined exception to the search warrant requirement." **Commonwealth v. Healry**, 909 A.2d 352, 358 (Pa. Super. 2006) (*en banc*) (citation omitted). "An inventory search of an automobile is permitted where: (1) the police have lawfully impounded the automobile, and (2) the police have acted in accordance with a reasonable, standard

policy of routinely securing an inventory of the contents of the impounded vehicle." *Id.* at 359 (citations omitted). Further, it is well settled that "an inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation." *Id.* (citation omitted).

> In determining whether a proper inventory search has occurred, the first inquiry is whether the police have lawfully impounded the automobile, i.e., have lawful custody of the automobile. The authority of police to impound vehicles derives from the police's reasonable community care-taking functions. Such functions include removing disabled or damaged vehicles from the highway, impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety.

*Lagenella*, 83 A.3d 94, at 102-03.

In *Lagenella*, our Supreme Court considered an inventory search of a safely parked car pursuant to the specific provisions of 75 Pa.C.S. § 6309.2 regarding persons operating a vehicle with a suspended license. *Id.* at 99-100. The *Lagenella* Court held that "a vehicle which has simply been **immobilized** in place is not in the lawful custody of police for purposes of an inventory search." *Id.* at 104 (emphasis added). The Court further concluded that the officer in that case did not have the authority to tow under Section 6309.2(a)(1) and the inventory search could not be justified in anticipation of towing the vehicle.[4] *Id.* at 101.

---

[4] The *Lagenella* Court noted:

- 8 -

Instantly, Appellant's arguments based on his status as a business invitee fails to identify any error in the trial court's conclusion that "[a]s soon as [Appellant] was arrested he no longer occupied any permissible status as a business invitee on the premises of the 7-11 convenience store." Trial Ct. Op. at 10. More significantly, Appellant fails to respond to the trial court's suggestion that the inventory search was proper under **Lagenella** because a violation of 75 Pa.C.S. § 3353 authorized the arresting officer to tow the vehicle. **See** Trial Ct. Op. at 11. Appellant fails to cite to or discuss Section 3353(b),[5] which creates the summary offense of unattended vehicle on

---

> Section 6309.2(a)(1) provides that, where a person operates a vehicle while his or her license is suspended, a law enforcement officer shall immobilize the vehicle and notify the appropriate judicial authority, or, "**in the interest of public safety, direct that the vehicle be towed and stored by** the appropriate towing and storage agent." 75 Pa.C.S.A. § 6309.2(a)(1) (emphasis added).

**Lagenella**, 83 A.3d at 101.

[5] Section 3353(b) states:

> **Unattended vehicle on private property.—**
>
> (1) No person shall park or leave unattended a vehicle on private property without the consent of the owner or other person in control or possession of the property except in the case of emergency or disablement of the vehicle, in which case the operator shall arrange for the removal of the vehicle as soon as possible.
>
> (2) The provisions of this subsection shall not apply to private parking lots unless such lots are posted to notify

private property, or the trial court's conclusion that he was in violation of that provision. Therefore, we are constrained to find Appellant's claim that the arresting officer lacked the authority to tow his vehicle waived. ***See*** ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009)( "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.")

Similarly, since Appellant's argument that the officer exceeded the scope of an inventory search relates to his claim that the officer lacked the authority to tow, that claim is waived as well.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/2017

---

the public of any parking restrictions and the operator of the vehicle violates such posted restrictions. For the purposes of this section "private parking lot" means a parking lot open to the public or used for parking without charge; or a parking lot used for parking with charge. The department shall define by regulation what constitutes adequate posting for public notice.

75 Pa.C.S. § 3353(b)(1)-(2). Although Appellant raises an argument based on the absence of signage, he fails to cite, discuss, or seek relief based on the exception to Subsection (b)(1) created by Subsection (b)(2).