**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT COLANGELO | : | |
| | : | |
| Appellant | : | No. 191 WDA 2021 |

Appeal from the Judgment of Sentence Entered January 6, 2021
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0000268-2020

BEFORE: BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: April 4, 2022**

Appellant, Robert Colangelo, appeals from the judgment of sentence imposed following his conviction of driving under the influence ("DUI")—highest rate of alcohol and public drunkenness.[1]  We affirm.

On November 22, 2019, Appellant was charged with the above-stated offenses relating to an incident that occurred on November 15, 2019 in Economy Borough.  A non-jury trial took place on October 6, 2020.  In its opinion, the trial court summarized the evidence at trial as well as its credibility findings:

> [O]n November 15, 2019, at 1:40 p.m., [Appellant] drove his yellow Ford Escape north on Route 65 in Beaver County, turned right on Economy Way, and turned left onto Beaver Avenue.  He parked in front of Giant Eagle; at about 1:58 p.m., he left his car

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(c); 18 Pa.C.S. § 5505.

and walked to Giant Eagle. He walked out of Giant Eagle at 2:02 p.m., stepped past his car, and got back in his car.

[Appellant] then drove from Giant Eagle to Dollar Tree. Dollar Tree is approximately 75 to 100 yards from Giant Eagle, in the same parking lot.

At approximately 2:20 p.m., Officer Aschley [of the Economy Borough Police Department] received a call to investigate a possibly intoxicated male who had left Dollar Tree and was seated in a yellow Ford Escape. Five to ten minutes later, Officers Aschley, Amrhein, and Priolo arrived at the Dollar Tree parking lot from the station. They saw [Appellant] in his car, which was not running. Officer Amrhein told [Appellant] to get out of the car. [Appellant] had a blank stare and did not make eye contact. [Appellant] reached with his left hand for the door handle and appeared to be reaching for something in his back right pocket. Eventually, he opened the door and got out of the car. Officer Aschley saw [Appellant] holding onto the vehicle's door frame to keep from falling over; [Appellant's] eyes were red, and he was swaying from side to side.

[Appellant] asked questions, including "What the fuck do you want?" and "What did I do?"; his tone varied from very loud to relaxed and subdued. He slurred his speech and was having difficulty putting together words and sentences. Officer Amrhein noticed that [Appellant] had a firearm[, which he was licensed to carry,] in his back pocket, and officers secured the firearm. Officer Aschley asked [Appellant] to take field sobriety tests, and he replied, "I won't take a tests." [sic] Officer Amrhein handcuffed [Appellant], who was arrested for suspicion of DUI and public drunkenness. The time from when the officers arrived to when they arrested [Appellant] was about 15 minutes.

Officer Aschley inspected [Appellant's] car. [Appellant's] cell phone was in the center console, and the keys were on the passenger seat. There was an empty half-gallon bottle of Vladimir vodka in the backseat and five unopened cans of Keystone Ice in the front passenger seat.

Officer Amrhein drove [Appellant] from the Dollar Tree parking lot to the police station, and Officer Aschley followed. The drive to the station took 10 minutes.

At the station, Officer Amrhein repeatedly asked [Appellant] to get out of the car, and [Appellant] refused. Officer Hartsell asked

[Appellant] to get out of the car, and [Appellant] refused. Officer Hartsell pulled [Appellant] from the car by his jacket and walked him to the booking and breathalyzing center. While Officer Hartsell walked [Appellant] to the booking and breathalyzing center, [Appellant] used profanities, including calling the officers present a racial slur. Getting [Appellant] out of the car took about 30 to 60 seconds.

Officer Aschley asked [Appellant] to calm down, and he did. [Appellant] was read the [Pennsylvania Department of Transportation ("DOT")] DL-26A form, signed the form, and agreed to take a breath test. Officer Aschley, who was certified to operate the DataMaster DMT, administered a breath test. [] [Appellant] gave breath samples at 3:22 p.m. and 3:25 p.m. The low reading for [Appellant's] breath test was a [blood alcohol content ("BAC")] of .356. Based on the high blood alcohol level, the police requested medical personnel to check on the condition of [Appellant]. Emergency medical services cleared [Appellant] to leave, and he was released to another person.

At trial, [Appellant] testified on his own behalf. He acknowledged that he drove from Route 65 to the Giant Eagle parking lot and that he drove from there to the parking lot by Dollar Tree. [Appellant] testified that he felt ill inside Dollar Tree, went to his car, drank some vodka, and went to sleep. The Court found this testimony to be not credible. Officer Aschley's testimony established that he had first observed [Appellant] with a blank stare, which is inconsistent with [Appellant] being asleep. The Court found [Appellant's] statement about drinking vodka after exiting Dollar Tree to be self-serving and not credible in view of the empty half-gallon vodka bottle found in the car.

Trial Court Opinion, 3/17/21, at 2-4 (record citations and footnotes omitted).

At the conclusion of trial, the trial court found Appellant guilty of DUI—highest rate of alcohol and public drunkenness. On January 6, 2021, the court sentenced Appellant for the DUI offense to a six-month term of restrictive probation with the first 72 hours on work release and a $1,000 fine; for the public drunkenness offense, Appellant was sentenced to pay a fine of $50. Appellant did not file a post-trial motion and instead filed this timely appeal.

- 3 -

Appellant raises the following issues on appeal:

[1.] Whether the court erroneously admitted blood alcohol evidence obtained through a breathalyzer as the Commonwealth failed to introduce testimony, or lay the appropriate foundation, to establish there was a 20-minute observation period where the person being tested did not ingest alcohol or other fluids, regurgitate, vomit[,] eat or smoke as required under [67] Pa. Code § 77.24.

[2.] Whether the court erroneously admitted blood alcohol evidence obtained through a breathalyzer when the Commonwealth presented evidence that the person being tested was incapable of providing consent for testing through a DL-26A based upon an alleged blood alcohol level of .356.

[3.] Whether [Appellant's] conviction for driving under the influence at count 1 is properly supported by the factual testimony and evidence submitted by the Commonwealth at trial as no testimony was presented from any witness as to [Appellant] being impaired (including relation back expert testimony) prior to the arrival of law enforcement or at any time when he had operated, driven, or had actual control of his motor vehicle.

[4.] Whether [Appellant's] conviction for public [drunkenness] is supported by the factual record as no testimony was presented from any witness called by the Commonwealth to establish that [Appellant] appeared in a public place manifestly under the influence of alcohol to a degree that the individual endangered himself or other persons or property or annoyed persons in the vicinity.

Appellant's Brief at 6 (unnecessary capitalization omitted).

Appellant's first two issues relate to the trial court's admission of the Appellant's breathalyzer test results, which showed that he had a BAC of .356 at the time of testing. In reviewing a trial court's evidentiary rulings, we are guided by the following standard:

The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there

is a clear abuse of discretion. Our standard of review of a challenge to an evidentiary ruling is therefore limited. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Williams***, 241 A.3d 1094, 1101 (Pa. Super. 2020) (citation omitted).

Appellant first argues that the trial court erred by admitting the results of his breath test because the court did not establish that he was not kept under continuous observation by a police officer for at least 20 minutes prior to the administration of his first breath test, as required by DOT regulations (the "20-minute rule"). ***See*** 67 Pa. Code § 77.24(a). Appellant contends that, while there may have been testimony at trial to show that he had been observed for 20 minutes, "the Commonwealth failed to establish the second element of the 'observation' requirement as there was no testimony introduced as to whether [Appellant] ingested alcoholic beverages or other fluids, regurgitated, vomited, [ate], or smoked in the 20 minutes prior to being subjected to the breathalyzer." Appellant's Brief at 10.

Pursuant to the Vehicle Code, chemical breath tests are admissible in DUI trials when performed by qualified operators and in accordance with "procedures prescribed jointly by regulations of the Departments of Health and Transportation." 75 Pa.C.S. § 1547(c)(1). Section 77.24(a) of the DOT regulations sets forth the 20-minute rule at issue here:

(a) *Observation*. The person to be tested with breath test equipment shall be kept under observation by a police officer or

certified breath test operator for at least 20 consecutive minutes immediately prior to administration of the first alcohol breath test given to the person, during which time the person may not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten or smoked. Custody of the person may be transferred to another officer or certified breath test operator during the 20 consecutive minutes or longer period as long as the person to be tested is under observation for at least 20 consecutive minutes prior to initial administration of the alcohol breath test.

67 Pa. Code § 77.24(a).

We have held that compliance with the 20-minute rule goes "go to the trustworthiness of the evidence." *Commonwealth v. Barlow*, 776 A.2d 273, 275 (Pa. Super. 2001). "**If that issue is raised**, failure to comply does not permit the results to be admitted[;] as substantive evidence with lessened reliability[,] it precludes admission." *Id.* (emphasis added). To satisfy the rule, the Commonwealth must show by a preponderance of the evidence that the "individual subjected to a breathalyzer test did not ingest anything for the 20 minutes prior to administration of the test, but [] 'observation,' as used in [Section] 77.24(a), [does] not mean 'eyes on [the individual's] mouth 100% of the time.'" *Commonwealth v. Snell*, 811 A.2d 581, 586 (Pa. Super. 2002) (quoting *Barlow*, 776 A.2d at 275).

This Court has required that an objection to the admissibility of BAC evidence based upon the 20-minute rule be raised in a pre-trial motion to suppress.[2] In *Commonwealth v. Stoops*, 723 A.2d 184 (Pa. Super. 1998),

---

[2] This Court has previously stated that a challenge to the admissibility of evidence based upon the Commonwealth's failure to follow DOT breath test
*(Footnote Continued Next Page)*

we rejected the Commonwealth's argument that the defendant had waived his argument premised on the 20-minute rule by not including it in his suppression motion but only because the defendant raised the issue orally at his suppression hearing and in a post-hearing brief and he was not provided with discovery that alerted him to the issue until two days before the hearing. *Id.* at 188. In **Commonwealth v. Murray**, No. 575 EDA 2019, 2019 WL 7290499 (Pa. Super. filed Dec. 30, 2019) (unpublished memorandum), we held that the defendant's 20-minute rule argument was waived as it was first raised at trial and not included in the defendant's pre-trial suppression motion. *Id.* at *5.[3]

The necessity that a challenge to the admissibility of breath test results be made prior to trial is particularly important with respect to a 20-minute rule claim as DOT regulations expressly provide that the arrestee may be observed by any officer over the course of the 20-minute period, not just the

_____

regulations should be raised in a motion *in limine* rather than in a suppression motion as the latter is intended to address evidence obtained in violation of a defendant's rights. **Commonwealth v. Hoopes**, 722 A.2d 172, 174 n.1 (Pa. Super. 1998); **see also** Pa.R.Crim.P. 581(A) (providing that a suppression motion may be filed "to suppress any evidence alleged to have been obtained in violation of the defendant's rights"). We need not decide here the precise vehicle by which a defendant may raise a challenge to the Commonwealth's adherence to the 20-minute rule, but rather as illustrated herein, the crucial factor in preserving such a challenge is that it is raised prior to trial to allow the Commonwealth to meet its burden to show the reliability of the breath test results.

[3] Although **Murray** is an unreported memorandum decision, we cite to it for its persuasive value. **See** Pa.R.A.P. 126(b) (non-precedential Superior Court decisions filed after May 1, 2019 may be cited for their persuasive value).

- 7 -

officer who performs the breath test. 67 Pa. Code § 77.24(a). To the extent a 20-minute rule challenge could be raised for the first time in the midst of trial, the Commonwealth would not have been on notice that they would need to call as a witness every officer who observed the defendant over the 20 minutes prior to the breath test, including officers who otherwise would not offer relevant evidence probative of the defendant's guilt. *Cf.* Pa.R.Crim.P. 581(E) (providing that a suppression hearing may be conducted prior to or at trial but "shall afford the attorney for the Commonwealth a reasonable opportunity for investigation" prior to the hearing).

In this case, Appellant filed an omnibus pre-trial motion, including a motion to suppress, but he did not raise a challenge based upon the 20-minute rule in that motion.[4] Instead, Appellant first raised the issue when he objected to the admission of Appellant's BAC results during the testimony of Officer Aschley, who performed the breath test. N.T., 10/6/20, at 55. Notably, at the point that Appellant raised the 20-minute rule issue, one of the officers who had observed Appellant after he had returned to the station, Lieutenant Hartsell, had already finished testifying and been excused from trial. *Id.* at 10-39. In addition, there was testimony at trial that another officer had

_____

[4] Appellant's motion to suppress the results of his chemical test was based upon the fact that the Commonwealth had not provided any discovery related to the testing at the time the motion was filed. Appellant's Omnibus Pre-Trial Motion, 5/4/20. A hearing on the omnibus motion was scheduled for June 2, 2020 but then cancelled without prejudice. Order, 6/3/20. Appellant did not seek to renew or amend his suppression motion prior to or at trial.

observed Appellant after his return to the station outside the presence of Officer Aschley. *Id.* at 16-17, 77-78. In light of Appellant's failure to raise his challenge based upon the 20-minute rule prior to trial, we conclude that Appellant has waived his first issue. *See Stoops*, 723 A.2d at 188; *Murray*, 2019 WL 7290499, at *5.

Appellant next argues that the trial court erred in admitting Appellant's breath test results on the basis that the evidence at trial showed that Appellant had a high degree of impairment, yet the Commonwealth did not show that Appellant was able to voluntarily consent to a breath test. Appellant contends that the Pennsylvania implied consent law does not automatically provide consent to chemical testing of blood or breath and that instead the consent must be freely given to the chemical test before the results of the test can be used against a defendant in a criminal proceeding. Appellant asserts that, viewing the totality of the circumstances, he could not have consented to the test based upon the fact that he was already in custody at the time the request was made, he was not able or willing to follow police commands, and police had already used force during his arrest and transport to the station.

Under the Fourth Amendment to the United States Constitution, a breath test following a DUI arrest is considered a search incident to arrest that may be conducted without a warrant. *Birchfield v. North Dakota*, 136 S.Ct. 2160, 2184-85 (2016); *Commonwealth v. Trahey*, 228 A.3d 520, 533 (Pa.

2020).[5]   Unless the motorist challenges the legality of the arrest itself, a warrantless breath test will be deemed valid under the Fourth Amendment, and the motorist has "no [constitutional] right to refuse it."  *Trahey*, 228 A.3d at 536 (quoting *Birchfield*, 136 S.Ct. at 1286).

However, the Pennsylvania implied consent law provides a motorist arrested on suspicion of DUI with the choice "either (a) to comply with the test or (b) to refuse and accept the consequences that accompany refusal," including a suspension of the driver's operating privileges.  *Commonwealth v. Bell*, 211 A.3d 761, 773 (Pa. 2019); *see also* 75 Pa.C.S. § 1547(a), (b)(1). Thus, under the implied consent statute, a motorist has "an absolute right to refuse all chemical testing."  *Bell*, 211 A.3d at 774 n.12.  The implied consent law and our appellate case law require that the motorist be apprised of her rights, which are contained in the DOT's DL-26 form, at the time of the request for chemical testing.  75 Pa.C.S. § 1547(b)(2); *see also Commonwealth v. Venable*, 200 A.3d 490, 495-96 & n.3 (Pa. Super. 2018); *Commonwealth v. Johnson*, 188 A.3d 486, 488 n.1 (Pa. Super. 2018).

There is no dispute in this matter that, after Appellant was transported back to the station, Officer Aschley read the DL-26 form to Appellant, Appellant signed the DL-26 indicating that he agreed to the breath test, and

---

[5] Unlike a breath test, a chemical test of blood is inadmissible absent a warrant or a recognized exception to the warrant requirement, such as the motorist's voluntary consent to the test.  *Birchfield*, 136 S.Ct. at 2185-86; *Trahey*, 228 A.3d at 530, 533; *Commonwealth v. Krenzel*, 209 A.3d 1024, 1028 (Pa. Super. 2019).

Appellant performed the test. N.T., 10/6/20, at 49-52. Appellant raises no argument that the warnings contained on the DL-26 form contained an inaccurate or incomplete recitation of his rights with respect to the testing he was asked to perform. *Cf. Commonwealth v. Krenzel*, 209 A.3d 1024, 1031-32 (Pa. Super. 2019) (consent to submit to blood test was not valid where officer failed to read DL-26 form to defendant or inform defendant of his right to refuse testing).[6]

Furthermore, Appellant did not raise the issue of the voluntariness of his consent in his pre-trial suppression motion; instead, the issue was first brought to the trial court's attention during closing arguments. N.T., 10/6/20, at 110-11. This Court has traditionally resolved the issue of whether a motorist voluntarily consented to chemical testing in DUI cases through the suppression motion process. *See, e.g.*, *Krenzel*, 209 A.3d at 1027; *Venable*, 200 A.3d at 494; *Johnson*, 188 A.3d at 488. While Appellant appears to argue that the Commonwealth was required to affirmatively prove in its case in chief that his consent to chemical testing was the product of a free and voluntary choice, he cites no decision for this proposition, and we are aware of no case law that would impose this burden upon the Commonwealth in the absence of a suppression motion. Therefore, we are constrained to find

---

[6] Indeed, Appellant alleges no ground for this Court to vitiate his consent to testing aside from factors that are characteristic of a large number of DUI cases, namely that he was highly intoxicated, he had already been placed under arrest, and that he had been confrontational with the officers who detained him.

- 11 -

that Appellant has waived any challenge based upon the voluntariness of his consent to testing. Pa.R.Crim.P. 581(B). Appellant's second issue thus merits no relief.

In Appellant's last two appellate issues, he challenges the sufficiency of the evidence to support his convictions of DUI—highest rate of alcohol and public drunkenness. A challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review under a *de novo* standard. ***Commonwealth v. Smith***, 234 A.3d 576, 581 (Pa. 2020). When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, were sufficient to prove every element of the offense beyond a reasonable doubt. ***Id.*** "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." ***Commonwealth v. Bowens***, 265 A.3d 730, 740 (Pa. Super. 2021) (*en banc*) (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***Id.*** (citation omitted). Finally, we note that the trier of fact has the authority to determine the weight of the evidence and credibility of the witnesses and is free to believe all, part, or none of the evidence. ***Id.*** at 741.

In his third issue, Appellant argues that, in the absence of evidence that he had a BAC of .356 within two hours of driving, the Commonwealth did not establish that he was guilty of the DUI offense. Appellant recognizes in his

brief that this appellate issue is entirely dependent on him prevailing on his challenge to the trial court's admission of the breath test results. Appellant's Brief at 21. However, as we have determined that the trial court properly admitted Appellant's test results, **see supra**, Appellant is not entitled to relief on this claim.

Finally, Appellant argues that there was insufficient evidence to support his conviction of the summary offense of public drunkenness. Appellant argues that there was no evidence submitted at trial that he had interactions in public with anyone other than the police officers who arrested him, and there was no testimony from the officers who made contact with him that they felt threatened or annoyed by Appellant's behavior.

The public drunkenness statute provides that "[a] person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol [] to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity." 18 Pa.C.S. § 5505. The public drunkenness statute does not apply to individuals who are taken to a public place by police officers; however, locations that are on private property but are frequented by members of the public are considered public places under the statute. **Commonwealth v. Whritenour**, 751 A.2d 687, 688 (Pa. Super. 2000) (road in private community that was open to residents, guests, and employees of community was a public place for purpose of public drunkenness statute); **Commonwealth v. Meyer**, 431 A.2d 287, 290-91 (Pa. Super. 1981) (reversing conviction where defendant was detained after

causing disturbance in private club and then involuntarily brought outside of the club by officers). Furthermore, the "manifestly under the influence of alcohol" element of the public drunkenness offense requires "some aberrant behavior" that could harm or annoy another. *Meyer*, 431 A.2d at 290-91 (citation omitted) (finding alternate grounds for reversal where testimony revealed that defendant, after being taken to a public place by officers, was only observed staggering and having the odor of alcohol ).

In finding that there was sufficient evidence to support the public drunkenness conviction, the trial court reasoned as follows:

> In this case, the parking lot outside the Dollar [T]ree was a public place because it was a premise open to the public. *Whritenour*, 751 A.2d at 688. [Appellant's] intoxication was shown by his blank stare, difficulty locating and opening the door handle, and physical instability in holding the car door frame for support and swaying from side to side. [Appellant's] speech was slurred, his eyes were red, and he had a hard time putting together words and sentences. Further, [Appellant's] impairment is reflected in judgment to ask officers "What the fuck do you want" and his continued use of profanity and racial slurs at the police station. The high degree of alcohol in [Appellant's] blood supports a conclusion that he endangered himself. Finally, [Appellant's] reaching for his back right pocket, where his legally carried firearm was, when confronted by police[,] demonstrates that he was intoxicated to a degree that endangered other persons.

Trial Court Opinion, 3/17/21, at 14-15 (some internal citations omitted).

We discern no error in the trial court's analysis of Appellant's sufficiency claim. Viewing the evidence in the light most favorable to the Commonwealth, Appellant was found in a place frequented by members of the general public— the parking lot for the Dollar Tree—and there was abundant evidence of his

high degree of intoxication from alcohol. While there is no evidence that Appellant had interactions with members of the public aside from the officers, his confrontational attitude towards the officers as well as the act of reaching for his firearm in his rear pocket while highly inebriated was sufficient to prove he that he "endanger[ed] [] other persons [] in his vicinity." 18 Pa.C.S. § 5505.

Finding no merit to Appellant's appellate issues, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/2022