COMMONWEALTH of Pennsylvania,
Appellee,

v.

Gregory WHRITENOUR, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 22, 2000.

Filed May 1, 2000.

Gregory H. Chelak, Milford, for appellant.

Charles F. Lieberman, Asst. Dist. Atty., Milford, for Com., appellee.

Before DEL SOLE, STEVENS and MONTEMURO*, JJ.

MONTEMURO, J.:

¶ 1 These are unconsolidated appeals from a single order entering judgment of sentence against Appellant on one charge each of public drunkenness [1] and disorderly conduct.[2] Appellant was sentenced to fines and costs of $260 on each count. The charges stemmed from Appellant's conduct during a snowstorm on the evening of December 29, 1998. He was found staggering in the middle of the street in Hemlock Farms, a gated community [3] of which he was a resident. He smelled of alcohol, with vomitus staining his front, and pants wet, apparently from having urinated on himself. Appellant's truck was at an intersection, partially off the roadway in a ditch, and blocking one lane. His speech was slurred, he attempted to evade officers who were attempting to assure his safety, and he began struggling when placed under arrest, striking and kicking the arresting officer. Three officers were required to subdue him.

¶ 2 Two briefs have been filed. Although the issue is slightly different in each, both challenge the judgment of sentence on the same grounds, that is, a claim

---

* Retired Justice assigned to Superior Court.

1. 18 Pa.C.S.A. § 5505. Public Drunkenness

A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol to the degree that he may endanger himself or other persons or property, or annoy persons within his vicinity.

2. 18 Pa.C.S.A. § 5503(a)(1). Disorderly conduct.

(a) Offense defined.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
(1) engages in fighting or threatening, or in violent or tumultuous behavior.

3. Testimony revealed that the community contains between 2650 and 2700 residences, both primary and secondary, and 2800 properties. Also located within the gates are a fellowship center for religious activities, a public library and a telephone relay station. In addition to residents passing through the gates, visitor passes were issued, for example, 5200 in May of 1999.

that the "public" element of the offenses was not met where the acts were performed on private property. In support of his contention, Appellant refers us to *Commonwealth v. Meyer*, 288 Pa.Super. 61, 431 A.2d 287 (1981), and *Commonwealth v. Coon*, 695 A.2d 794 (Pa.Super.1997). Both are distinguishable.

¶ 3 18 Pa.C.S.A. § 5503(c) provides in pertinent part:

As used in this section, the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

¶ 4 In *Meyer, supra*, the appellant was charged with public drunkenness after engaging in a verbal altercation with the barmaid in a V.F.W. Post. He was removed from the club, and taken outside where he was arrested. The Court found that the Post was a private club to which the public did not have access, the Commonwealth did not prove beyond a reasonable doubt that Appellant was intoxicated, and most critically, even if the area of the Appellant's arrest could be considered "public," he was not there voluntarily, a precondition to arrest, having been forcibly removed from the club by police. In *Coon, supra*, the appellant was charged with disorderly conduct after firing a gun from his front porch in the direction of his neighbor's home shooting range. The Court found that there was no public access to the victim's property, and that the Commonwealth had failed to prove the necessary intent.

¶ 5 Here, the argument is that the road in question was located in a private community, which necessarily excludes the public, and is accessible only to residents or those present by permission of a resident. However, the road was located in a neighborhood, whatever its legal constitution, and was traversed by members of the community and their invitees or licensees. This "public," albeit a limited one, included residents of the homes in the community, their guests and employees, as well as visitors attending religious events, users of the public library located in the community, and delivery people of all kinds.

¶ 6 Black's Law Dictionary (5th Ed.1979) defines private property as "such property as belongs absolutely to an individual, and of which he has the exclusive right of disposition." The road in question simply fails to fit this definition. While the area was private in terms of the limitations placed on access, it was not private in the same sense as the house of the victim in *Coon*. Indeed, had Appellant been firing a gun, as did the appellant in *Coon*, the private aspect of the community's property ownership would offer no protection from prosecution. There, the victim's property was a private dwelling in an isolated, rural area to which no "substantial group" had access. *Coon*, 695 A.2d at 798. The same cannot be said of the area in question here, as the members/residents of the Hemlock Farms Community constitute such a group.

¶ 7 Although the record contains no information on the legal theory under which the community was constituted, there is also nothing to indicate that Appellant possessed exclusive control of the roadway. Indeed, the opposite is true, as some of the community's traffic regulations are included, and they provide that for violations other than those mentioned in the regulations, "[t]he Pennsylvania Vehicle Code shall apply." (Defendant's Exhibit 1). Thus the privacy which attaches to membership in Hemlock Farms is not absolute as it applies to the roadway.

¶ 8 Appellant's truck had been left partially blocking a trafficway to which others, that is, the public as constituted by members of the community and their invited guests, had no less right of access than Appellant. This obstruction caused a hazard to them, especially given the weather

conditions. Moreover, Appellant was himself in danger because of his own inebriation, and unlike the appellant in *Meyer*, was clearly in the roadway voluntarily.

¶ 9 Judgment of sentence affirmed.