J-S80013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN VINCENT KENNEDY | |
| Appellant | No. 209 MDA 2016 |

Appeal from the Judgment of Sentence June 5, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0002906-2014

BEFORE: LAZARUS, J., STABILE, J., and RANSOM, J.

MEMORANDUM BY LAZARUS, J.:         **FILED JANUARY 13, 2017**

John Vincent Kennedy appeals from the judgment of sentence, entered in the Court of Common Pleas of Dauphin County, following his convictions for criminal trespass,[1] harassment,[2] disorderly conduct,[3] and public drunkenness.[4] Upon review, we affirm.

The trial court summarized the relevant facts of this matter as follows:

> In the early evening of April 2, 2015, Rebekah Webster was alerted to a disturbance on her property located at 231 Middle Road, Halifax, Pennsylvania, when her horses became agitated

---

[1] 18 Pa.C.S. § 3503.

[2] 18 Pa.C.S. § 2709.

[3] 18 Pa.C.S. § 5503.

[4] 18 Pa.C.S. § 5505.

while she was returning them to their stalls. When she left the stalls to investigate, she heard someone screaming and cursing from the woods surrounding her home. Upon further inspection, she observed a man with his arms in the air. Ms. Webster ducked low and headed back to her house, where she retrieved her phone and left a voicemail message for her neighbors, Sam and Patty Crum, to alert them that someone was on their property. Ms. Webster then contacted her brother, Matthew Webster, who lived in the next house down from her property, at 228 Middle Road[.] Mr. Webster informed his sister that he had also heard the man and was already en route to her property. After arriving at his sister's property, Mr. Webster told her to stay in the house while he investigated.

After Mr. Webster departed to get his vehicle, Ms. Webster called her father and alerted him to what was taking place. As she was ending her telephone conversation with her father, she noticed a blue and white full-size Bronco at a distance of 30 to 40 feet from her front door. The Bronco proceeded toward her house until it was nearly adjacent to her front porch. [Kennedy] exited the Bronco and ascended the three steps to Ms. Webster's front door. While holding one of her two German [Shepherd] dogs, Ms. Webster cracked the front door to see who had come to her front door. When she realized that she did not know the man on her porch, she attempted to close the door. However, [Kennedy] stumbled on the top step and grabbed the door handle for support. [Kennedy] began yelling at Ms. Webster and accusing her of calling his sister's phone about someone on her property. Ms. Webster sensed that [Kennedy] was intoxicated due to the odor of alcohol on his breath and because he was slurring his words. Out of fear, Ms. Webster denied that she was "Mrs. Webster." She again tried to close the front door, but [Kennedy] grabbed her arm. The door closed on [Kennedy's] arm and on the dog's nose. A struggle ensued, wherein [Kennedy] overpowered Ms. Webster, who in turn fell backwards on top of her dog. [Kennedy] then entered Ms. Webster's home and continued screaming at her.

Once [Kennedy] had made entry into the house, Ms. Webster received a phone call from her neighbor, Dolores Patricia ("Patty") Crum. While attempting to answer the call, Ms. Webster accidentally disconnected the call by hitting the "decline" button. She nevertheless used the call as an opportunity to deceive [Kennedy] into thinking she had connected the call and was informing the caller that [Kennedy]

had forced his way into her home and was attacking her. At the same time, a second German [Shepherd] owned by Ms. Webster lunged at [Kennedy], forcing him to flee.

After Appellant departed Ms. Webster's property in his vehicle, Ms. Webster placed a phone call to her brother Matthew Webster, to inform him of what had happened and to provide her brother with a description of the vehicle [Kennedy] was driving. Mr. Webster encountered [Kennedy's] vehicle on the road and followed it, and also telephoned the police to alert them to the situation. Ms. Webster also spoke to the police sometime after the incident. [Kennedy] was stopped later in the day by Pennsylvania State Police in Elizabethville[.]

Trial Court Opinion, 4/7/16, at 3-5.

A jury trial was held on June 2, 2015, after which Kennedy was found guilty of the aforementioned charges. The court sentenced Kennedy on June 5, 2015 to 9 to 23 months' incarceration. Kennedy filed a timely post-sentence motion, which was denied on January 27, 2016. Kennedy filed a timely notice of appeal and court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On appeal, Kennedy raises the following issues for our review:

1. Whether the evidence at trial was insufficient to prove beyond a reasonable doubt that [Kennedy] was guilty of criminal trespass where the Commonwealth failed to show that [Kennedy] entered, gained entry[] by subterfuge or surreptitiously remained in any building or occupied structure or separately secured or occupied portion thereof, and where the Commonwealth failed to prove that [Kennedy] did so knowing that he was not licensed or privileged to do so?

2. Whether the evidence at trial was insufficient to prove beyond a reasonable doubt that [Kennedy] was guilty of summary harassment where the Commonwealth failed to show that [Kennedy] struck, shoved, kicked or otherwise subjected the other person to physical contact, or attempted or threatened to do the same, and where the Commonwealth failed to prove

that [Kennedy] did so with intent to harass, annoy or alarm another?

3. Whether the evidence at trial was insufficient to prove beyond a reasonable doubt that [Kennedy] was guilty of disorderly conduct where the Commonwealth failed to show that [Kennedy] engaged in fighting or threatening, or in violent or tumultuous behavior, and where the Commonwealth failed to prove that [Kennedy] did so with intent to cause public inconvenience, annoyance, or alarm, or recklessly created a risk thereof?

4. Whether the evidence at trial was insufficient to prove beyond a reasonable doubt that [Kennedy] was guilty of public drunkenness where the Commonwealth failed to show that [Kennedy] appeared in any public place manifestly under the influence of alcohol?

Brief for Appellant, at 5-6.

In considering sufficiency of the evidence claims,

we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. . . . Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. Of course, the evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part or none of the evidence presented.

**Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa. Super. 2013) (en banc).

The Commonwealth can satisfy its burden via wholly circumstantial evidence. **Id.**

Kennedy first challenges the sufficiency of the evidence as to his conviction for criminal trespass. "The crime of criminal trespass involves either entering or remaining in a place, while knowing that one is not

- 4 -

licensed or privileged to do so." ***Commonwealth v. Walker***, 559 A.2d 579, 582 (Pa. Super. 1989). Kennedy argues that he was privileged to be on Ms. Webster's property to visit her because they are neighbors, and that when she opened her door and held her dogs back it was to welcome him as a visitor. However, the jury was instructed that Kennedy had no permission to enter Ms. Webster's home. It was also not disputed that her home was an occupied structure. Defense counsel did not object to these instructions. Accordingly, the only element for the jury to decide was whether Kennedy entered Ms. Webster's home, which Kennedy denied doing. However, Ms. Webster testified that Kennedy forced his way inside as she attempted to close her door. Thus, evidence was presented of all elements of the crime of criminal trespass, and it was for the jury to determine whose testimony to find credible. ***Watley***, ***supra***.

Next, Kennedy claims that the evidence was insufficient to convict him of harassment. One commits harassment when one "subject[s] [another] to physical contact with the intent to harass, annoy, or alarm him." ***Commonwealth v. Blackham***, 909 A.2d 315, 320 (Pa. Super. 2006). Ms. Webster's testimony at trial established that she found "[Kennedy to be] terrifying." N.T. Trial, 6/2/15, at 34. She also testified that he grabbed her arm. ***Id.*** Furthermore, as Kennedy entered Ms. Webster's home, she was thrown back onto the floor. We note that "[a]n intent to harass may be inferred from the totality of the circumstances." ***Commonwealth v. Cox***,

72 A.3d 719, 721 (Pa. Super. 2013). Thus, the elements of harassment were sufficiently established.

Kennedy also asserts that insufficient evidence was presented to show that he was guilty of disorderly conduct. A person is guilty of disorderly conduct if he or she, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof" does any of the following:

> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
>
> (2) makes unreasonable noise;
>
> (3) uses obscene language, or makes an obscene gesture; or
>
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503. Kennedy argues that he did not have the requisite intent to cause a *public* inconvenience, nor did he recklessly create a risk thereof, since his behavior took place at Ms. Webster's private residence. We disagree.

Kennedy angrily screamed profanities so loudly that it startled not only Ms. Webster, but also her brother, who lives on a separate property. Thus, at least two distinct members of the public were alarmed by Kennedy's actions. As we noted in **Commonwealth v. O'Brien**, 939 A.2d 912 (Pa. Super. 2007), "the size of any neighborhood, any premises or private community does not dictate whether or not that premises, neighborhood, or community is 'public' for purposes of the disorderly conduct statute." **Id.** at 914 (citing **Commonwealth v. Whritenour**, 751 A.2d 687 (Pa. Super.

2000) (private road in gated community is public place)). Accordingly, the evidence was sufficient to convict Kennedy of disorderly conduct.

Finally, Kennedy argues that the Commonwealth did not present sufficient evidence to show that Kennedy was guilty of public drunkenness. "A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol." 18 Pa.C.S. § 5505. Again, Kennedy asserts that he did not appear in a public place while under the influence of alcohol, since Ms. Webster's residence is a private property. This claim is without merit, as discussed above. *O'Brien*, *supra*; *Whritenour*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2017