J-A12002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES DEVAUGH MOULTRIE, | |
| Appellant | No. 551 WDA 2018 |

Appeal from the Judgment of Sentence Entered March 20, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0009753-2017

BEFORE: BENDER, P.J.E., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED JUNE 24, 2019**

Appellant, James Devaugh Moultrie, appeals from the judgment of sentence of an aggregate term of 12 months' probation, imposed after he was convicted of defiant trespass, 18 Pa.C.S. § 2706(a)(1), and public drunkenness, 18 Pa.C.S. § 5505. Appellant challenges the sufficiency of the evidence to sustain his convictions. After careful review, we affirm in part and reverse in part.

The trial court summarized the evidence presented at Appellant's non-jury trial, as follows:

> City of Pittsburgh Police Officer Donald Reola was working in his capacity as a police officer on April 22, 2017. ([N.T. Trial, 3/20/18, at] 9). At 2:30 a.m. that day, he received a call from a female regarding removing [Appellant] from the property. ([*Id.* at] 10). Upon arrival at the Northview Heights housing complex, Officer Reola, along with Northview Heights security, made contact with [Appellant], who was on the porch of the apartment unit occupied by the female caller. ([*Id.* at] 9-10, 15). Officer

Reola noted that [Appellant] was "intoxicated and totally out of control." ([*Id.* at] 10). [Appellant] exhibited glassy eyes and slurred speech, and he was using extremely profane language. ([*Id.*]). Officer Reola approached [Appellant], who was enraged. ([*Id.* at] 11). [Appellant] stated, "I have something for you bitch as[s] white motherfuckers. I'm going to shoot and kill racist cop motherfuckers. You'll see. I have something for ya'll. I'm no[t] playing. I will kill all of you." ([*Id.*]). Officer Reola instructed [Appellant] to leave the housing complex and not return. ([*Id.*]). [Appellant] then ran into the woods. ([*Id.*]).

A short while later, Officer Reola was asked to return to Northview Heights by the same female caller. ([*Id.* at 12]). When Officer Reola arrived, he saw [Appellant] through the window of the apartment next door to where the female caller lived. ([*Id.*]). [Appellant] came out of that residence, and was arrested for the above-listed charges[, as well as terroristic threats, 18 Pa.C.S. § 2706(a)(1)]. ([*Id.* at] 13).

[Appellant] testified that he provided Officer Reola with an address of 403 West Mifflin Street, which is not located within the Northview Heights public housing complex. ([*Id.* at] 24). The West Mifflin Street residence was the address on his identification. ([*Id.*]). He further testified that he did not have keys to any premises within Northview Heights[,] nor was he listed on any lease. ([*Id.*]).

Trial Court Opinion (TCO), 8/28/18, at 2-3.

Based on this evidence, the trial court convicted Appellant of defiant trespass and public drunkenness, but acquitted him of terroristic threats. He was immediately sentenced to 12 months' probation for his offense of defiant trespass, and given no further penalty for his public drunkenness conviction. Appellant filed a timely notice of appeal, and he also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on August 28, 2018. Herein, Appellant presents two issues for our review:

- 2 -

    I.      Whether the evidence was insufficient to convict [Appellant] of defiant trespass where there was no testimony from a property owner or agent of the owner that [Appellant] defied an order to leave issued by an authorized person?

    II.     Whether the evidence was insufficient to convict [Appellant] of public drunkenness where [Appellant] was neither in a public place nor was he so manifestly under the influence of alcohol that he presented a danger or annoyance to himself or others?

Appellant's Brief at 4.

We begin by recognizing:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. **Commonwealth v. Moreno**, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. **Commonwealth v. Hartzell**, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. **Moreno, supra** at 136.

**Commonwealth v. Koch**, 39 A.3d 996, 1001 (Pa. Super. 2011).

Appellant first challenges the sufficiency of the evidence to sustain his conviction of defiant trespass. That offense is defined, in pertinent part, as follows:

**(b) Defiant trespasser.--**

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

(i) actual communication to the actor;

          ***

(2) Except as provided in paragraph (1)(v), an offense under this subsection constitutes a misdemeanor of the

third degree if the offender defies an order to leave personally communicated to him by the owner of the premises or other authorized person. An offense under paragraph (1)(v) constitutes a misdemeanor of the first degree. Otherwise it is a summary offense.

18 Pa.C.S. § 3503(b).

Here, Appellant argues that the evidence was insufficient to support his conviction of defiant trespass, graded as a misdemeanor of the third degree, because the Commonwealth failed to prove that he was ordered to leave the property "by the owner of the premises or other authorized person." 18 Pa.C.S. § 3503(b)(2). According to Appellant, the Commonwealth's only witness, Officer Reola, was not authorized to provide notice against trespass simply because he is a police officer. Appellant also stresses that there was no testimony that any other authorized person — such as security personnel — provided notice to Appellant, or expressly authorized Officer Reola to do so. Finally, Appellant contends that even if his "conviction for defiant trespass could be sustained without such testimony, there was no testimony … about the security guards' duties or responsibilities and whether they had the authority to provide notice against trespass." Appellant's Brief at 16.

We find Appellant's arguments unconvincing. First, the record supports the trial court's conclusion that the Northview Heights security personnel, along with Officer Reola, notified Appellant that he was to leave the apartment complex and not return. *See* TCO at 4. For instance, Officer Reola testified that when he arrived at the scene, he was "[t]rying to get [Appellant] off the property *with Northview Heights security* and the complainant female that

- 4 -

[Appellant] was visiting when he had gone." *See* N.T. Trial at 9 (emphasis added). When asked again to clarify "the nature of the complaint or dispatch[,]" the officer testified that he was "[t]o get [Appellant] off the property" because "the Northview Heights security wanted him out." *Id.* at 10. The officer also later mentioned that Appellant was asked to leave after he threatened the "several officers there." *Id.* at 11. From this testimony, the court found that Officer Reola "was there with security from Northview Heights[,]" *id.* at 30, and that Appellant "was told by police *and Northview Heights security personnel* that he was not permitted to be in the whole apartment complex[,]" TCO at 4 (emphasis added). We conclude that Officer Reola's testimony was sufficient to support this factual finding by the trial court.

Additionally, we cannot accept, under the specific circumstances of this case, Appellant's position that it was necessary for the Commonwealth to present the testimony of the security personnel to establish their authority to provide notice against trespass to Appellant. The female tenant of Northview Heights called police at 2:30 in the morning to ask that Appellant be removed from her residence. N.T. Trial at 9. When Officer Reola arrived at the property, he — along with Northview Heights security personnel — confronted Appellant, who "was intoxicated and totally out of control...." *Id.* at 10. Appellant was "very enraged" and repeatedly threatened the "several officers" at the scene that he would "shoot and kill" them. *Id.* at 11. It would be entirely illogical to conclude that the owner of Northview Heights would

employ security guards, but not vest them with the authority to notify a belligerent and threatening individual to leave the property and not return. Thus, it was reasonable for the court to infer that the security personnel were 'authorized persons' under the grading provision of section 3503. Appellant's challenge to the sufficiency of the evidence to support his defiant trespass conviction is meritless.

Next, Appellant contends that the evidence was insufficient to sustain his public drunkenness conviction. That offense is defined, in pertinent part, as follows:

> A person is guilty of a summary offense if he appears **in any public place** manifestly under the influence of alcohol … to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity.

18 Pa.C.S. § 5505 (emphasis added).

As the above-emphasized language makes clear, an element of the offense is that the individual was in a public place when impaired to a dangerous or annoying degree. In the case on which Appellant primarily relies, **Commonwealth v. Biagini**, 655 A.2d 492 (Pa. 1995), our Supreme Court affirmed this Court's conclusion that Biagini was not intoxicated in a public place because he was "in his home and on his porch…." **Id.** at 494 (citation omitted). Appellant contends that the same is true in this case, as Officer Reola testified that when he was initially dispatched to Northview Heights, he encountered Appellant standing on the "front porch landing" of the apartment where Appellant was a guest of the tenant. N.T. Trial at 15.

- 6 -

There was no testimony establishing that the porch area was accessible to any other tenant or guest of the apartment complex, let alone the public in general. Further, when Officer Reola returned to Northview Heights the second time, he observed Appellant "inside the neighbor's apartment[.]" *Id.* at 14. The officer was able to "see [Appellant] through a window" of that residence. *Id.* at 13. When Appellant came out of the apartment, he was immediately arrested "for the terroristic threats, the defiant trespass and public intoxication." *Id.* This evidence demonstrates that Appellant was allegedly intoxicated on the porch of a private apartment and inside a neighboring unit. Under *Biagini*, such areas are not 'public places' under section 5505.

Moreover, the Commonwealth's reliance on *Commonwealth v. Whritenour*, 751 A.2d 687 (Pa. Super. 2000), is misplaced. There, we upheld Whritenour's public intoxication conviction where he was "found staggering in the middle of the street in … a gated community of which he was a resident." *Id.* at 687. We recognized that "the road in question was located in a private community, which necessarily excludes the public, and [was] accessible only to residents or those present by permission of a resident." *Id.* However, we found that the road constituted a 'public place' because it

> was located in a neighborhood … and was traversed by members of the community and their invitees or licensees. This 'public,' albeit a limited one, included residents of the homes in the community, their guests and employees, as well as visitors attending religious events, users of the public library located in the community, and delivery people of all kinds.

*Id.* at 688.

Here, while Appellant was allegedly intoxicated in a multi-unit apartment complex, the Commonwealth presented no evidence regarding the public's access to that property. Instead, the entirety of the testimony regarding the apartment complex was as follows:

[The Commonwealth:] Now this area is -- is this a residence or an apartment complex?

[Officer Reola:] Apartment complex. Northview Heights.

[The Commonwealth:] So it has multiple units?

[Officer Reola:] Yes.

N.T. Trial at 11.

Moreover, even if we presumed that, as in ***Whritenour***, the apartment complex was accessible to tenants, their guests, and at least some members of the public, there was no evidence indicating that the 'front porch landing' where Appellant was standing when confronted by Officer Reola was open to, or used by, anyone other than the tenant of that apartment. This is contrary to ***Whritenour***, where the defendant was walking on a road used by other residents of the neighborhood, their guests, and certain members of the public. Accordingly, ***Whritenour*** does not control this case. Instead, we are compelled to follow ***Biagini*** and conclude that Appellant was not intoxicated in a public place. Therefore, we reverse his conviction for public drunkenness.[1]

_____

[1] We need not remand for resentencing. The trial court imposed no further penalty for Appellant's public drunkenness conviction and, as such, our

Judgment of sentence affirmed in part, reversed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/24/2019</u>

---

reversal does not impact the court's overall sentencing scheme. **See Commonwealth v. Thur**, 906 A.2d 552, 569-70 (Pa. Super. 2006) (stating that if our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan).