J-S35008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRES O. JONES | : | |
| | : | |
| Appellant | : | No. 1430 MDA 2022 |

Appeal from the Judgment of Sentence Entered July 18, 2022
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s):  CP-40-CR-0000327-2021

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:          **FILED: OCTOBER 30, 2023**

Andres Jones appeals his judgment of sentence for criminal trespass, resisting arrest and public drunkenness. He claims the evidence was insufficient to support each of his three convictions and that the verdict was against the weight of the evidence. Based largely on the well-reasoned trial court opinion, we affirm.

We borrow liberally from the trial court's recitation of the facts, which is supported by the record. Jones and his fiancé at the time, Kelsey Hoxsie, lived together with their son and Jones's daughter from a previous relationship. On November 22, 202, Jones and Hoxsie went to a party at the apartment of their neighbor, Jamie Stare. Stare's brother, Jay Deininger, and Jacob Crablo also

_____

[*] Retired Senior Judge assigned to the Superior Court.

attended the party, where alcohol was being served. Jones and Hoxsie left the party late in the evening and went to their apartment next door. At approximately 3:30 a.m., Jones and Hoxsie got into an argument. Hoxsie grabbed her son, and the two went to Stare's apartment and hid in the bathroom.

Jones followed Hoxsie next door. He knocked loudly on the door. Deininger answered the door, and while there is some dispute as to how Jones gained entry, it is undisputed that he entered the apartment. Deininger and Crablo subsequently scuffled with Jones, but they were eventually able to force Jones from the apartment and onto the front porch shared by the two apartments.

Shortly thereafter, Officer Michael McGrath of the Wilkes-Barre City Police Department arrived at the scene and found Jones's body halfway through the front porch window to Stare's residence. Officer James Fisher also responded to the scene.

While Jones disputes what happened next, we note that Officer McGrath testified that he climbed the front porch stairs, at which point Jones assumed a fighting stance and said "Let's go bro." N.T., 4/29/2022, at 66. According to Officer McGrath, Jones smelled of alcohol and showed signs of intoxication. Officer McGrath spoke to the people inside Stare's apartment and then informed Jones he was under arrest. When Officer McGrath attempted to handcuff Jones, Jones pulled away and refused to put his hands behind his

back. Officer Fisher then pulled out his taser device and told Jones to comply. Jones responded that he wasn't scared as he had "been tased before." *Id.* at 45.

Officer Fisher called for additional officers, and two other officers arrived on the scene. The officers were able to take Jones to the ground, and although Jones continued to resist, the officers were ultimately able to place him into custody. Officer McGrath noted that the incident created substantial noise in an otherwise quiet residential neighborhood, and neighbors turned on their lights in response to the disturbance.

Jones was charged with criminal trespass, simple assault, disorderly conduct, resisting arrest and public drunkenness. The matter proceeded to a jury trial, at which Hoxsie, Officer McGrath, Officer Fisher, Deininger and Crablo all testified for the Commonwealth. Jones testified in his own defense. Nonetheless, the jury convicted Jones of criminal trespass and resisting arrest. The trial court, meanwhile, found Jones guilty of the summary offense of public drunkenness. The court sentenced Jones to an aggregate probationary term of 15 months in the county intermediate punishment program, with the first 30 days to be served in prison followed by three months under house arrest.

Jones filed post-sentence motions, which the court denied. He then filed a timely notice of appeal and complied with the court's directive to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. In the statement, Jones complained there was insufficient evidence to support any

of the three convictions and that the convictions were against the weight of the evidence.

The trial court issued a responsive Rule 1925(a) opinion, in which it thoroughly addressed each of Jones's claims. The court initially recounted the standard of review applicable to sufficiency claims, **see** Trial Court Opinion, 1/5/2023, at 5, and then individually reviewed the evidence supporting each of Jones's three convictions.

First, the court outlined what the Commonwealth was required to prove in order to sustain a criminal trespass conviction, which a person is guilty of "if, knowing that he is not licensed or privileged to do so, he … breaks into any building or occupied structure or separately secured or occupied portion thereof." **Id.** at 6 (*quoting* 18 Pa. C.S.A. § 3503(a)(1)(ii)). The court then explained how the evidence that Jones forced himself into the residence and then began climbing through the front porch's window was sufficient to sustain such a conviction here. **See** Trial Court Opinion, 1/25/2023, at 6-8. It specifically rejected Jones's arguments that he had permission to enter Stare's residence and that he had not broken into Stare's apartment. **See id.** at 7-8.

The court then noted what the Commonwealth needed to prove in order to sustain Jones's conviction for resisting arrest, which a person commits "if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or

requiring substantial force to overcome the resistance." ***Id.*** at 8-9 (*quoting* 18 Pa. C.S.A. § 5104). The court "did not hesitate to conclude" the evidence was sufficient to support a conviction here, explaining:

> Officer McGrath of the Wilkes-Barre City police department testified that as he responded to a 4 AM 911 call for a disorderly male[,] he observed him hanging inside an open window. The Officer approached [Jones] who turned toward him, squared up in a fighting stance and said "Let's go bro." He ignored the threat of a taser and refused to comply with lawful commands. Ultimately it took Officer McGrath, Officer Fisher and two other responding officers to wrestle him into handcuffs.

Trial Court Opinion, 1/5/2023, at 9.

The trial court then turned to Jones's claim that the evidence had been insufficient to support his conviction for public drunkenness, which a person is guilty of "if he appears in any public place manifestly under the influence of alcohol or a controlled substance … to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity." ***Id.*** at 10 (*quoting* 18 Pa. C.S.A. § 5505). In finding the Commonwealth had presented sufficient evidence to sustain the conviction here, the trial court specifically rejected Jones's claim that the shared front porch was not a "public place" and he therefore could not be convicted of public drunkenness. ***See*** Trial Court Opinion, 1/5/2023, at 11-13 (*citing* ***Commonwealth v. Whritenour***, 751 A.2d 687, 688 (Pa. Super. 2000) (holding limited access road in private community was a "public place")).

Lastly, the trial court rejected Jones's challenges to the weight of the evidence based on his assertions of witness bias and conflicting testimony.

- 5 -

The trial court summarized the evidence at trial and found the evidence was not so contrary to the verdict as to "shock [its] sense of justice," as a court is required to find before ruling that the verdict was against the weight of the evidence. *See id.* at 14-15 (*citing* **Commonwealth v. Cousar**, 928 A.2d 1025, 1036 (Pa. 2007)). The court also noted that it is the province of the fact-finder to assess the credibility of witnesses. **See** Trial Court Opinion, 1/5/2023, at 14 (*citing* **Commonwealth v. Bruce**, 916 A.2d 657, 661 (Pa. Super. 2007)).

In his appellate brief, Jones's first three issues focus on the sufficiency of the evidence underlying his three convictions. However, we detect no error in the trial court's conclusion that the evidence was sufficient to sustain each of Jones's convictions. Jones does not convince us otherwise. With one notable exception, Jones essentially renews arguments on appeal that he raised in his Rule 1925(b) statement and which the trial court found to be without merit. We agree with the trial court that these arguments are without merit and adopt its analysis on the sufficiency claims as our own. **See** Trial Court Opinion, 1/5/2023, at 5-13.

The one notable exception referenced above is Jones's argument regarding the sufficiency of his resisting arrest conviction. In his Rule 1925(b) statement, Jones specifically argued only that his actions "did not create a situation where a substantial risk of bodily injury to the public servant or anyone existed or that his actions required substantial force to overcome the

resistance." Statement of Matters Complained of On Appeal, 11/23/2022, at 1 (unpaginated). He abandons that argument on appeal, instead raising the distinct argument that there was no lawful arrest for him to resist. This claim is waived. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) (holding that any issues not raised in a Rule 1925(b) statement are deemed waived).

In his final claim, Jones challenges the trial court's conclusion that the verdict was not against the weight of the evidence. Our review of such a claim, as Jones recognizes, is limited to whether the trial court palpably abused its discretion in denying the weight claim. *See Commonwealth v. Martin*, 297 A.3d 424, 436 (Pa. Super. 2023). As noted above, the trial court recounted the evidence at trial and found the verdict was not against the weight of this evidence:

> First, [Jones] challenges the [jury's] conclusion that he was without privilege to enter the residence at [Stare's residence]. He represented that his presence was permissive. This claim is meritless. [Jones] was physically removed from the residence after a fight with other guests there. Soon after he opened a window at [Stare's residence] and was observed hanging through that window. Two unrelated witnesses, one from outside and another from the inside the residence, saw him do this. [Jones's] testimony that another party opened the window does not change the fact that he sought to enter another's residence through an opening not designed for human access in circumstances which demonstrate that he was not privileged to do so. Welcome guests do not usually enter by the window. …
>
> Next, [Jones] complains in two related issues that the verdict is against the weight of the evidence because of conflicting testimony, and bias of the witnesses. … The police and lay witnesses testified to facts which taken together seemed logical

and credible. The jury was aware that, with the exception of [Jones's] girlfriend who was running away from him, [] all the witnesses, including the police, did physically fight with [Jones] on the night of his arrest. We do not doubt that this caused him to suspect that these witnesses are not likely to offer testimony favorable to him. The [jury's] resolution of that credibility issue does not shock our sense of justice.

Trial Court Opinion, 1/5/2023, at 14-15. Although Jones continues to argue the Commonwealth's witnesses were either biased or not credible, it is, as the trial court noted, the province of the fact-finder to assess the credibility of the witnesses. *See Bruce*, 916 A.2d at 661. Jones has simply not shown any palpable abuse of discretion on the part of the trial court.

Based on the above, we find that Jones's sufficiency and weight claims are without merit, and we therefore affirm his judgment of sentence. Because of our reliance on the trial court's January 5, 2023 opinion, we have attached a copy of the opinion to this memorandum. The parties are instructed to attach the same to all future filings.

Judgment of sentence affirmed.


Judgment Entered.


_____

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/30/2023

11TH JUDICIAL DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA : | IN THE COURT OF COMMON PLEAS |
| : | OF LUZERNE COUNTY |
| : | |
| v. : | |
| : | CRIMINAL DIVISION |
| ANDRES O. JONES : | |
| Defendant / Appellant : | |
| : | |
| : | No. 327 of 2021 |
| : | |

## OPINION

BY: THE HONORABLE DAVID W. LUPAS

CLERK OF COURTS CRIMINAL
LUZ CNTY JAN5'23PM4:13

I.    **FACTS AND PROCEDURAL HISTORY**:

This matter comes before the Court pursuant to a Criminal Information filed on April 23, 2021, against the above-named Appellant by the District Attorney of Luzerne County. The Information charged the Appellant with criminal trespass, 18 Pa.C.S.A. §3503(A)(1)(ii), simple assault, 18 Pa.C.S.A.§ 2701(A)(1), disorderly conduct, 18 Pa.C.S.A.§5503(A)(1), resisting arrest, 18 Pa.C.S.A. §5104, and public drunkenness, 18 Pa.C.S.A. §5505.

At trial, evidence was presented that on November 22, 2020, the Appellant was a guest at "friends' giving" party at 96 West Chestnut Street in Wilkes-Barre. At that time, he resided next door at 94 West Chestnut Street with his daughter, his girlfriend, Kelsey Hoxsie, their son. (N.T. pg. 27) The

1

holiday party at 96 West Chestnut Street featured alcohol. (N.T. pg. 34) Late in the evening, sometime after 3AM, the Appellant and Ms. Hoxsie, began to argue. He pulled the blanket from her bed as she tried to sleep, called her names and pulled off her engagement ring and threw it across the room. (N.T. pg. 30) Ms. Hoxsie and her son then left the residence at 94 West Chestnut and went next door to 96 West Chestnut Street where she was apparently admitted to enter. (Id.) Appellant followed her next door. He knocked loudly on the door which was answered by Jay Deininger who Appellant hip checked out of the way before he entered the residence. (N.T. pg. 31, 67) Appellant was ordered to leave the residence, but he refused. (N.T. pg. 58) Ms. Hoxsie and Appellant's daughter took shelter from him in the bathroom of 96 West Chestnut Street. Two guests at that residence, Jay Deininger and Jacob Crablo, briefly fought with the Appellant and ultimately, he was removed from the residence. (N.T. pg. 68-69) The Appellant persisted. He opened a window accessible from the front porch outside and began to crawl through the window. (Id.) It was at this time that police arrived who observed his body halfway through the open window. (N.T. trial pg. 80-81)

Officers James Fisher and Michael McGrath both of the Wilkes-Barre City Police Department responded to a 911 call to 96 West Chestnut Street.

2

(N.T. pg. 41-42) Upon arriving, Officer McGrath observed the Appellant hanging through the front window of 96 West Chestnut. Office McGrath ascended the front porch stairs where he was greeted by the Appellant who squared up in a fighting stance to face him saying, "Let's go bro." (N.T. pg. 82). Officer McGrath who is experienced in observing persons under the influence of drugs and alcohol noted that the Appellant smelled of alcohol and appeared to be intoxicated. (N.T. pg. 83). Officer Fisher attempted to handcuff the Appellant but he refused to comply and he pulled away. (N.T. pg. 86) Officer Fisher renewed his demand that the Appellant comply with officers' directions pointing a taser device at him. Appellant advised that he wasn't "scared" and that he had "been tased before." (N.T. pg. 87, see also pg. 45-46). Appellant continued to resist and it took Officers Fisher, McGrath and two other officers to take him to the ground where he continued to resist. (N.T. pg. 46). With great effort, and at some personal risk to themselves, police took Appellant into custody. Officer McGrath noted that some other residences in the neighborhood turned their lights on in response to the disturbance created by Appellant's conduct and the necessary law enforcement response thereto. (N.T. pg. 89) He also agreed that the fracas necessitated by the Appellant resulted in substantial noise which at an hour

3

between three and four AM was unusual for the quiet residential neighborhood. (N.T. pg. 79)

A jury trial commenced on April 19, 2022, and the jury returned their verdict on April 20th. The Appellant was found guilty of counts 1, 4 and 5, and not guilty of counts 2 and 3. A presentence investigation (PSI) was Ordered to be completed by the Luzerne County Adult Probation and Parole Department prior to sentencing. On July 25, 2022, the Defendant appeared before this Court for imposition of sentence. Upon a review of the PSI, and the arguments of counsel we imposed sentences within the standard range of the sentencing guidelines. On July 28, 2022, Appellant's counsel filed a post sentence motion which vaguely raised weight and sufficiency claims. We denied his motion by Order dated September 13, 2022. Thereafter, on October 10, 2022, Appellant field a counseled notice of appeal. We ordered the Appellant to file his concise statement pursuant to Pa. R.A.P. 1925(b). After we granted Appellant's request for an additional 20 days to file his concise statement we received his filed allegations of error on November 23, 2022.

For the reasons set forth below, the Appellant's appeal should be denied and the verdicts and judgments of sentence affirmed.

## II. **LAW AND DISCUSSION**:

The Appellant's Concise Statement of Matters Complained of on Appeal alleges insufficient evidence to support his convictions for criminal trespass, resisting arrest and public drunkenness. We disagree.

When reviewing a sufficiency of the evidence claim, we view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner and determine if the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. A reviewing court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed. Moreover, a jury may believe all, some or none of a party's testimony and the Commonwealth may sustain its burden by means of wholly circumstantial evidence. Commonwealth v. McFarland, 278 A.3d 369, 381 (Pa Super 2022) (citations omitted) Only where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, is it deemed insufficient as a matter of law. Commonwealth v. Robinson, 817 A.2d. 1153, 1158

5

(Pa.Super. 2003 quoting <u>Commonwealth v. Santana</u>, 460 Pa. 482, 333 A.2d 876 (1975)).

The Appellant alleges that the there is insufficient evidence to prove beyond a reasonable doubt that he broke into a structure. He alternately argues that he was invited into the structure and was there permissibly. The evidence presented at trial belies this claim. A person commits the offense of criminal trespass "if, knowing that he is not licensed or privileged to do so, he breaks into any building or occupied structure or separately secured or occupied portion thereof." <u>18 Pa.§3503(a)(1)(ii)</u>.

"A person breaks into a building or occupied structure if he gains entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access." <u>18 Pa.§ 3503(a)(3)</u>. Additionally, the entry requirement of our criminal trespass statute is satisfied by insertion of an instrument which is held or manipulated by the defendant, or so closely associated with his body that it essentially becomes an extension thereof." <u>Commonwealth v. Furness</u>, 2016 PA Super 298, 153 A.3d 397, 401–02 (2016) (internal quotations and citations omitted)

Having presided over the trial in this matter, we agree that the evidence was sufficient to enable the jury to find the Appellant guilty of criminal trespass. Jay Deininger testified that he was awoken by loud knocking at the

6

door. (N.T. pg. 66) A neighbor, Kelsey, (Ms. Hoxsie) and her son, rushed inside saying that "(Appellant) was going crazy..." Kelsey then locked herself in the bathroom. Soon after, Appellant loudly knocked at the door. (Id.) As soon as Mr. Denininger opened the door for him, he "like hipped it and pushed it open and came right in." (N.T. trial pg. 67). The witness agreed that the Appellant forced himself into the residence. (Id.) Thereafter, Mr. Deniniger and Jayson Crablo, physically fought with the Appellant and compelled him to leave the residence. (Id. pg. 69). Undeterred, the Appellant opened the front window and began climbing through the window. (Id.) Wilkes-Barre City police officer, Michael McGrath arrived at that moment and witnessed the Appellant hanging into the residence at 96 West Chestnut Street. (Trial N.T. pg. 80-81). While Appellant argued at trial that his presence, hanging inside the half open window of 96 West Chestnut Street was permissive. We disagree. At least circumstantially, his having been thrown of the house to be kept away from the young woman locked in the bathroom moments before climbing into the window belies this claim.

The evidence viewed in the light most favorable to the Commonwealth was sufficient to prove guilt beyond a reasonable doubt that the Appellant broke into the residence. This is especially clear where the credible evidence proved that his body was halfway through the open window which is an

7

opening not designed for human access. Even if the Jury believed Appellant's testimony that he did not open the window, he was observed by Officer McGrath entering the opening which is not designed for human access. See 18 Pa.§ 3503(a)(3). Accordingly, this Court has no hesitation in finding that the evidence presented at trial was sufficient to demonstrate beyond a reasonable doubt that the Appellant is guilty of criminal trespass.

We submit that this conclusion also fairly addresses the Appellant's claim at paragraph 3 of his concise statement which alleges that we erred in denying his motion for judgment of acquittal. Plainly, a prima facia case existed where the evidence is sufficient to prove his guilt beyond a reasonable doubt.

Appellant next complains that the evidence was insufficient to prove beyond a reasonable doubt that he is guilty of resisting arrest. He specifically argues that the he did not "create a situation where a substantial risk of bodily injury to the public servant or anyone else existed or that his actions required substantial force to overcome the resistance." This claim likewise fails.

"A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or

8

requiring substantial force to overcome the resistance." 18 Pa. C.S.A.§ 5104. The Superior Court upheld the trial court's rejection of a sufficiency challenge like Appellant's in Commonwealth v. Clark, 761 A.2d 190, 193 (Pa. Super 2000). After being informed that he was under arrest, (Clark) refused to comply with lawful commands, assumed a fighting stance, verbally declared his intent to physically fight police, then physically resisted non-lethal force and the police had to wrestle him to make the arrest. Commonwealth v. Clark, 761 A.2d 190, 193 (Pa. Super 2000).

At the Appellant's trial, Officer McGrath of the Wilkes-Barre City police department testified that as he responded to a 4AM 911 call for a disorderly male he observed him hanging inside an open window. (N.T. pg. 79-81). The Officer approached the Appellant who turned toward him, squared up in a fighting stance and said, "Let's go bro." (N.T. pg. 82) He ignored the threat of a taser and refused to comply with lawful commands. Ultimately it took Officer McGrath, Officer Fisher and two other responding officers to wrestle him into handcuffs. (N.T. pg. 87-88) This struggle took place on an elevated porch cluttered with Appellant's weights which police accessed by climbing a one story flight of stairs which was slippery being covered with destroyed pumpkins. (N.T. pg. 86). We do not hesitate to conclude that the evidence was sufficient to prove that the Appellant's conduct created a situation where

9

a substantial risk of bodily injury to the public servant existed and that his actions required substantial force to overcome his resistance. (N.T. pg. 46, 87-88) Appellant's sufficiency claim must fail.

Appellant next challenges the sufficiency of the evidence for his conviction for public drunkenness. He claims that the Commonwealth failed to establish that he was intoxicated to a degree that he may endanger himself or others. We were the factfinder for this offense because it is a summary offense. The Crimes Code defines the offense of public drunkenness, in relevant part, as follows: "A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol or a controlled substance... to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity" 18 Pa.C.S.A. § 5505.

Reviewing the evidence we heard at trial we note that Officer Fisher has training in recognizing intoxicated persons and is experienced having spent 17 years patrolling the City on the night shift. (N.T. pg. 44) He testified that the Appellant appeared under the influence alcohol. (N.T. pg. 43). Officer McGrath, also an experienced veteran of the night shift, similarly detected that the Appellant was under the influence of alcohol. Appellant's arrest was preceded by a house party where he was a guest which included the consumption of alcohol and lasted into the early morning hours. Accordingly,

10

there is ample evidence to support his intoxication. We submit that preceding analysis of his resisting arrest conviction supports our conclusion that he endangered himself and other persons and we incorporate that analysis into our resolution of this issue.

To his claim that his conduct was not in public we turn to Commonwealth v. Meyer, 431 A.2d 287 (Pa. Super. 1981), where the Superior Court helpfully observed that "Section 5505 does not define the term 'public.' However, [t]he term does appear, however, in two places in the Crimes Code: in the section dealing with prostitution, section 5902, and in the section dealing with disorderly conduct, section 5503. Section 5902(f) defines it as 'any place to which the public or any substantial group thereof has access.' The ordinary meaning of 'access' is: 'the right to enter or make use of,' 'the state or quality of being easy to enter. Section 5503(c) defines public places as, inter alia, 'any premises which are open to the public.'" Meyer, 431 A.2d at 289 (footnotes omitted). Section 5503(c) provides as follows: "As used in this section the word 'public' means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any

11

neighborhood, or any premises which are open to the public." 18 Pa.C.S.A.§ 5503(c).

We also rely on Commonwealth v. Whritenour, 751 A.2d 687, 688 (Pa. Super. Ct. 2000), where the Court found that an even limited number of persons in a neighborhood located in "a private community, which necessarily excludes the public" are public areas as defined by Section 5503(c). In concluding that the road in the private community was a public place the Whritenour Court observed that the road where Whritenour was during the commission of his offense was "accessible only to residents or those present by permission of a resident…. and was traversed by members of the community and their invitees or licensees." Commonwealth v. Whritenour, 751 A.2d 687, 688 (Pa. Super. Ct. 2000). We find limited access road way akin to the shared front porch of the Appellant and neighboring residence. The Commonwealth did not argue that Appellant was trespassing when he knocked, however loudly, on the door at 96 West Chestnut Street. Anyone visiting or making a delivery to either resident has equal access to climb the stairs of the double block residence and access the residents at either address from the shared front porch. We think it is also important to note that some of the Appellant's misconduct occurred on his neighbors' portion of the front porch.

12

We believe that this fact distinguishes this case from the Superior Court's conclusion in the non-precedential case Commonwealth v. Cook. In Cook, the Superior Court reversed the trial court's conclusion that Ms. Cook was in public pursuant to Section 5503 when she appeared intoxicated shouting obscenity from her own front porch. Commonwealth v. Cook, No. 234 WDA 2016, 2017 WL 527973, (Pa. Super. Ct. Feb. 9, 2017). The court reasoned that her front porch, apparently used by her exclusively, was not a public area. (Id. at pg. 5) The Appellant was not on his own front porch when he caused a disturbance but instead, he was on his neighbors' porch climbing through their front window. The experienced prosecutor carefully built the record with witness testimony to prove that the Appellant's behavior did annoy persons in his vicinity. Officer McGrath testified that the residential neighborhood was usually quiet and that he observed neighbors turning on their lights in the early morning hours. We believe that this was circumstantial evidence that persons in the vicinity were in fact annoyed. (N.T. 79, 88-89). Giving every inference to the Commonwealth as verdict winner, we think that these facts support our conclusion the Appellant was intoxicated in a public place.

Appellant next makes a series of challenges to the weight of the evidence. A trial court is not to grant relief for such claims unless the verdict

13

is so contrary to the evidence as to shock one's sense of justice. Commonwealth v. Cousar, 593 Pa. 204, 223, 928 A.2d 1025, 1036 (2007). Appellant raised three challenges to the weight of the evidence. First, he challenges the Jury's conclusion that he was without privilege to enter the residence at 96 West Chestnut Street. He represented that his presence was permissive. This claim is meritless. The Appellant was physically removed from the residence after a fight with other guests there. Soon after he opened a window at 96 West Chestnut and was observed was hanging through that window. Two unrelated witnesses, one from outside and another from the inside the residence, saw him do this. (N.T. pg. 58, 82) Appellant's testimony that another party opened the window does not change the fact that he sought to enter another's residence through an opening not designed for human access in circumstances which demonstrate that he was not privileged to do so. Welcome guests do not usually enter by the window. Appellant's challenge to the weight of the evidence is without merit.

Next Appellant complains in two related issues that the verdict is against the weight of the evidence because of conflicting testimony, and bias of the witnesses. The jury is free to judge the credibility of witnesses and credit only that testimony which they believe. Commonwealth v. Bruce, 916 A.2d 657, 661 (Pa. Super 2007). The police and the lay witnesses testified

14

to facts which taken together seemed logical and credible. The jury was aware that, with the exception to the Appellant's girlfriend who was running away from him, that all the witnesses, including the police, did physically fight with the Appellant on the night of his arrest. We do not doubt that this caused him to suspect that these witnesses are not likely to offer testimony favorable to him. The Jury's resolution of that credibility issue does not shock our sense of justice. The Appellant's weight claims should fail.

Finally, Appellant claims that we erred by declining to schedule a hearing on his post sentence motions. He cites <u>Pa. R. Crim.P 720</u> which does not require the trial court to schedule a hearing where as here there is no need to do so to resolve the issues. <u>Pa. R. Crim. P. 720(B)(2)(b).</u> Each of Appellant's issues were addressed by this court's own observations and review of the trial transcripts. Accordingly, Judgment of sentence in this case should be Affirmed.

**END OF OPINION**